# Richmond

James Warren Deaner v. Commonwealth of Virginia.

October 13, 1969.

Record No. 7077.

Present, Snead, C. J., and I'Anson, Carrico, Gordon and Harrison, JJ.

*Leonard A. Paris (James R. Scott, Jr.,* on brief), for plaintiff in error.

*James B. Wilkinson, Special Assistant to the Attorney General,* for defendant in error.

HARRISON, J., delivered the opinion of the court.

The question involved here is whether the defendant, James Warren Deaner, having been arrested and taken into custody for operating a motor vehicle while under the influence of alcohol, had a right to consult with his attorney prior to having a sample of his blood taken for chemical analysis.

Defendant was arrested in the City of Richmond at approximately 1:30 A.M. on January 13, 1968, and charged with operating his motor vehicle while under the influence of alcohol or some other self-administered intoxicant or drug. He was advised by the arresting officer that, having operated a motor vehicle upon a public highway in Virginia, he was deemed to have consented to have a sample of his blood taken for a chemical test to determine the alcoholic content thereof and that the unreasonable refusal to do so constituted grounds for the revocation of his privilege to operate a motor vehicle.

Defendant, while indicating a willingness to comply with the statute, told the arresting officer that he would first like to consult with his attorney. He was taken to the magistrate's office, and there again voiced his willingness to take the blood test provided he was allowed to consult with his attorney. Because of activity in that office, defendant was unable to contact his attorney until 4:40 A.M., which was after the two-hour statutory period during which the test could be administered had expired.

The committing magistrate certified that he advised defendant, who had been arrested and who had refused to permit the taking of a blood sample, that such refusal—if found to be unreasonable—constituted grounds for the revocation of his license to operate a motor vehicle upon the highways of Virginia, and that defendant refused and failed to execute a declaration of refusal. Deaner was charged with having failed and refused to permit a sample of his blood to be taken to determine the alcoholic content thereof.

The warrant issued shows that it was "executed this, the 13th day of January, 1968, by arresting the within named party [the defend-

ant], and by summoning the within named witnesses to appear in traffic court".

At a hearing held February 23, 1968, the warrant shows defendant was found "guilty—op. lic. revoked for 3 months and costs", and signed by Herman A. Cooper, Judge of the Traffic Court.

This order of the traffic court, suspending defendant's license, was appealed to the Hustings Court of the City of Richmond.

On April 23, 1968, the court below found defendant guilty of such refusal and suspended his license for a period of three months and assessed him with payment of the costs. It was to this action of the trial court that we granted defendant a writ of error.

Defendant argues that his right to counsel is one of the rights guaranteed an accused under Section Eight of the Constitution of Virginia, *Watkins* v. *Commonwealth*, 174 Va. 518, 6 S. E. 2d 670 (1940), and by the Sixth Amendment to the United States Constitution, *Gideon* v. *Wainwright*, 372 U. S. 335, 83 S. Ct. 792, 9 L. ed. 2d 799 (1963).

Deaner contends that the refusal to take the prescribed blood test does not result in an automatic suspension of the right to operate a motor vehicle in Virginia unless such refusal first be determined to be unreasonable. In essence, he maintains that his unwillingness to take such a test "was conditioned only" upon the exercise of a right, which he says is a constitutional right, to consult with his attorney prior to doing so, and therefore was not unreasonable.

Defendant also points to an opinion of the Attorney General of Virginia, rendered June 27, 1968, which held that an individual who declines, upon the advice of counsel, to submit to the blood alcohol test prescribed in Virginia's Implied Consent Law, would have reasonable ground for refusing to submit to such test within the meaning of the statute.

We must first determine whether the proceeding, for revocation of the license of one who refuses to submit to a blood test after having been charged with operating a vehicle under the influence of alcohol, is a criminal proceeding, or a civil and administrative procedure.

We summarize the sections of Virginia's Implied Consent Law which are pertinent to this appeal. Code § 18.1-55.1 (b) provides that any person who operates a motor vehicle upon a public highway in this state shall be deemed thereby, as a condition to such operation, to have consented to have a sample of his blood taken for a chemical

test to determine the alcoholic content thereof, if he is arrested for a violation of § 18.1-54 (driving drunk statute) or of a similar ordinance of any county, city or town within two hours of the alleged offense.

Paragraph (c) provides that a person so arrested shall be advised by the arresting officer of the provisions of paragraph (b) and the result of the unreasonable refusal to take such test. This section also provides that, where such person refuses to permit such test, he shall be taken before a committing magistrate. If he again refuses the test, after having been further advised of the provisions of paragraph (b) and the result of a refusal, and declares his refusal in writing, or fails to declare in writing, then no blood sample shall be taken.

Paragraph (i) provides that if one refuses the test, the refusal is not evidence and shall not be commented upon in the drunk driving case.

Paragraph (j) provides the procedure to be followed by the committing justice where there is a refusal or failure to take the blood test, and the form which must be executed by the justice. It further directs that the justice forthwith issue a warrant charging the person refusing to take the test with a violation of this section. It directs that the warrant shall be executed in the same manner as criminal warrants.

Paragraph (1) prescribes the procedure the court is to follow upon receiving from the committing justice the declaration of refusal or certificate referred to in paragraph (k), together with the warrant. It directs that the court fix a date for the trial of the warrant subsequent to the defendant's criminal trial for driving under the influence of intoxicants.

Paragraph (m) makes the declaration of refusal or certificate returned by the committing justice prima facie evidence that the defendant refused the test, but permits the introduction of evidence by the defendant on the basis of his refusal, and directs the court to determine the reasonableness of such refusal.

Under paragraph (n), if the court finds the defendant guilty, it shall suspend the defendant's license for a period of ninety days for a first offense.

Paragraphs (o) and (p) provide for an appeal from a conviction and suspension of license and prescribe the procedure for appeal and trial to be the same as is provided by law for misdemeanors.

An analysis of the above sections shows none of the indicia of a criminal prosecution. The criminal offense which gives rise to the

procedure under the Implied Consent Law is driving under the influence of alcohol or drugs. The same motor vehicle operation may give rise to two separate and distinct proceedings—one a civil and administrative procedure and the other a criminal action. Each action proceeds independently of the other and the outcome of one is of no consequence to the other.

The implied consent of one who operates a vehicle on the public highways of Virginia to take a blood test, in event he be charged with drunk driving, is not a part of the penalty or punishment inflicted for drunk driving. It is a measure flowing from the police power of the state designed to protect other users of state highways.

It has been repeatedly held in Virginia and elsewhere that the operation of a motor vehicle on a public highway is not a natural right but a conditional privilege, which may be suspended or revoked under the police power. The operator's license is not a contract or a property right in a constitutional sense. It is a privilege granted to those who are qualified, and it is withheld from those who are not. See *Pritchard* v. *Battle*, 178 Va. 455, 17 S. E. 2d 393 (1941), and authorities therein cited.

Under the statutes of Virginia, an arrest for drunk driving results in the following actions by law enforcement officers. A criminal warrant is issued charging the accused person with the commission of a criminal offense—drunk driving. The accused is arrested, is taken into custody and is restrained until he gives bail for his appearance and trial. The trial is conducted as any other criminal trial with the usual safeguards and right of appeal. The accused can be fined and imprisoned—either or both. The burden of establishing his guilt is placed on the Commonwealth. The other is the action provided in the paragraphs quoted from the Implied Consent Law. Should an accused refuse to take the blood test, after two explanations of the consequence of such refusal, a "warrant" is issued charging the person with such refusal. The warrant referred to by the statute is obviously not a criminal warrant. It is in the nature of "a writ or precept from a competent authority in pursuance of law, directing the doing of an act, and addressed to the officer or person competent to do the act. . . ." Black's Law Dictionary, p. 1756 (4th ed. 1951).

True, the statute directs that the warrant "be executed" in the same manner as a criminal warrant. This is to prescribe an appropriate method of serving notice on the accused.

It will be noted that the declaration of refusal or certificate of the committing magistrate is prima facie evidence of such refusal. An accused who refuses a blood test is not required to post bond for his appearance, and he does not have to give bail or enter into a recognizance. He is under no legal duty to appear at the hearing if he does not desire to introduce evidence of the basis and reasonableness of his refusal. He cannot be fined or imprisoned either for his refusal to take the test, or for his failure to appear at a hearing. In fact there is nothing about the entire proceeding that parallels the procedure in a criminal prosecution.

The fact that the procedure for trial and appeal is the same as for misdemeanors is simply the course the General Assembly directs be followed. An administrative and civil proceeding is not converted into a criminal action merely because the procedural steps preliminary to trial, and incident to appeal, are the same as in a misdemeanor case.

In the instant case it is manifest that the police department of the City of Richmond used the same forms to initiate and conduct the proceeding against Deaner, growing out of his refusal to take the test, as those used in criminal cases. The warrant is designated as a "warrant of arrest", and the officer who executed the warrant or notice on Deaner, on January 13, 1968, made his return on a form which contained the printed words "executed this, the _____ day of _____, 19___ by arresting the within named party. . . ." However, these actions on the part of the officers and the committing magistrate, did not convert a proceeding, which under the statute is a civil proceeding, and an administrative matter, into a criminal case.

■ The procedure which is followed in a case where one refuses to take a blood test is not too dissimilar to that prescribed under Article 2 of the Virginia Operators' and Chauffeurs' License Act (Chapter 5, Title 46.1, of the Code of 1950, as amended, 1967 Repl. Vol.), which results in the revocation of the license to drive an automobile of one who has committed certain specified offenses. In commenting on the provisions of this act the court said in *Pritchard* v. *Battle, supra*: "The revocation is no part of the punishment fixed by the jury or by the court wherein the offender is tried. [Citing case.] Nor is it, in our opinion, an added punishment for the offense committed. It is civil and not criminal in its nature. [Citing cases.]" 178 Va. 455, 462, 17 S. E. 2d 393, 395.

A further parallel is found in Virginia's Habitual Offenders Act.

(Chapter 5, Article 7, Title 46.1 of the Code of 1950, as amended, 1967 Repl. Vol.). There, upon the commission of a certain number of enumerated offenses and the certification thereof by the Division of Motor Vehicles, the court, in which the information is filed, enters an order directing the accused to show cause why he should not be barred from operating a motor vehicle on the highways of the state. A hearing is had which can result in the accused, if found to be an habitual offender, losing his license for a period of ten years and until the privilege is restored by order of court. As under the Implied Consent Law, no provision is made for bail, recognizance, fine or imprisonment. The procedure is an administrative procedure and a civil proceeding, having as its purpose the determination of whether an accused person is an habitual offender, and whether his license to operate a car should be revoked. The proceeding under the Implied Consent Law is likewise designed to revoke the license of a person charged with drunk driving who refuses a blood test, and provides such person with the opportunity to show the reasonableness of his refusal.

In *Blow v. Commissioner of Motor Vehicles,* (S. D. 1969), 164 N. W. 2d 351, the Commissioner of Motor Vehicles appealed from an order of a lower court vacating the revocation of Blow's driver's license because of his refusal to submit to a chemical analysis of his blood under South Dakota's Implied Consent Law. The Court, reversing the lower court, said:

"The narrow question presented for decision is whether Blow's request to talk to his attorney before he exercised his option to either consent or refuse a blood test is a basis for the trial court's determination that he did not refuse to submit to the requested blood test. . . .

"The trial court specifically found Blow was arrested for operating a motor vehicle while under the influence of intoxicating liquor and that there were reasonable grounds for such arrest; that a police officer requested him to submit to a chemical analysis of his blood; that he was properly advised of his rights in connection with such requested blood test; and that after such request he said he wanted to speak to his lawyer first about it. . . . However, for purposes of decision we assume Blow was not permitted to call or talk to his attorney after he asked to do so. . . .

\* \* \*

"The proceeding to determine or review the suspension or revocation of a driver's license for refusal to submit to a chemical test is a civil and administrative proceeding. It is separate and distinct from a criminal action on a charge of driving while under the influence of intoxicating liquor or drugs." 164 N. W. 2d 351, 352.

In *Finocchairio* v. *Kelly*, 11 N. Y. 2d 58, 226 N. Y. S. 2d 403, 181 N. E. 2d 427 (1962), cert. den. 370, U. S. 912, 82A S. Ct. 1259, 8 L. Ed. 2d 405, the question was whether an arrested driver's request for an opportunity to consult counsel before submitting to a blood test was reasonable and not a refusal under the Implied Consent Law. In directing reinstatement of the revocation, the court said:

" 'So far as the revocation of petitioner's license for his conditional refusal to take a blood test is concerned, the constitutional rights of petitioner were not invaded because of the refusal of his request for counsel.' "

In *Gottschalk* v. *Sueppel*, 258 Iowa 1173, 140 N. W. 2d 866 (1966), the lower court relied upon *Escobedo* v. *State of Illinois*, 378 U. S. 478, 84A S.Ct. 1758, 12 L. Ed. 2d 977 (1964) and reinstated a driver's license, holding that the driver should have had an opportunity to consult with his attorney before exercising the option to consent or refuse to submit to a chemical test. In reversing, the Iowa court held that the right to counsel was limited to criminal prosecutions and did not apply to civil and administrative driver's licensing procedures.

In *Finley* v. *Orr*, 1968, Cal. App., 69 Cal. Rptr. 137, the court held there was no merit to the appellant's contention that he was denied his right to have counsel present when he was called upon, while in custody of the police, to decide whether he should submit or refuse to submit to one of the tests. See also *Schmerber* v. *California*, 384 U. S. 757, 86A S.Ct. 1826, 16 L. Ed. 2d 908 (1966), where the defendant unsuccessfully invoked his right to assistance of counsel under the Sixth Amendment.

In Virginia the consent to take a blood test is given when a person operates a motor vehicle. It is not a qualified consent and it is not a conditional consent, and therefore there can be no qualified refusal or conditional refusal to take the test.

The fact that under the Virginia statute an accused is afforded an opportunity to establish the reasonableness of his refusal does not

operate to dilute the consent previously given, or convert that consent into a qualified or conditional one. The statute does excuse from taking the test one whose refusal is reasonable. An illustration is where a person's health would be endangered by the withdrawal of blood.

For this court to uphold the contention of defendant that his right to consult counsel before refusing or taking the test is a constitutional right, would virtually nullify the Implied Consent Law. If the defendant here has a constitutional right to consult with his employed counsel prior to consenting to take the test, then it follows that other persons who are less fortunate, and who are indigent, would have to be afforded the same right. The practical effect of this would be that a decision to refuse the test would not be based upon "reasonableness", as contemplated by the Implied Consent Law, but whether, in the judgment of the attorney, the refusing of the test would best serve the interest of his client in a trial of the criminal charge of drunk driving. Manifestly this would frustrate the intent and object of the law and perpetuate the evil it seeks to correct.

Our conclusion is that the blood test prescribed is a part of a civil and administrative proceeding and that Deaner had no right to condition his taking the test upon his ability first to consult with counsel. Thus his inability to contact his attorney within two hours after his arrest for drunk driving, and his unwillingness to take the test without prior consultation with counsel, does not constitute a reasonable basis for his refusal. There has been no violation here of any constitutional right guaranteed defendant by either the Constitution of Virginia or the Constitution of the United States.

The final order of the court below, suspending defendant's license "for a period of three months", is modified, and it is ordered that the defendant's license be and it is suspended for a period of ninety days as the law provides. Except as so modified, the said order is affirmed.

*Modified and affirmed.*

CARRICO, J., dissenting.

I dissent. I cannot agree with the conclusion of the majority that the provisions of Code, § 18.1-55.1, directed to the revocation of the driver's license of a person refusing to take a blood test, are civil, not criminal, in nature.

If, as the statute provides, a "warrant" is issued "charging the person refusing to take the test" with "violation" of the Code section,

the warrant is "executed in the same manner as criminal warrants," and the defendant is found "guilty as charged in the warrant" of "a first offense" or of "a second or subsequent offense," resulting in the imposition of "the penalty for refusal," then surely a criminal, not civil, proceeding takes place. That, to me, appears so plainly upon the face of the statute as to permit no other conclusion.

I would hold, therefore, that the defendant was entitled to consult with his counsel before deciding whether to take the blood test. It would logically follow that the defendant's failure to take the test in the absence of such consultation did not constitute an unreasonable refusal under the statute.

GORDON, J., joins in this dissent.