Present: Carrico, C.J., Compton, Stephenson, Hassell, and Keenan, JJ., and Poff, Senior Justice, and Cochran, Retired Justice

GEORGE BRAME

v. Record No. 952340

COMMONWEALTH OF VIRGINIA

OPINION BY
CHIEF JUSTICE HARRY L. CARRICO
September 13, 1996

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Walter W. Stout, III, Judge

This appeal presents two questions, (1) whether the judicial suspension of a person's operator's license for one year based upon his refusal to submit to a blood or breath test when he has already suffered a seven-day administrative suspension for the same refusal violates the constitutional prohibition against double jeopardy, and (2) whether application of the seven-day administrative suspension statute to the defendant in this case results in a denial of due process. Finding that the trial court did not err in answering both these questions in the negative, we will affirm.

The seven-day administrative suspension of the defendant's license was made pursuant to Code § 46.2-391.2(A). This section provides in pertinent part that if a person refuses to submit to a breath test in violation of Code § 18.2-268.3, upon issuance of a warrant for driving while intoxicated in violation of Code § 18.2-266 or for refusing to take a blood or breath test in violation of Code § 18.2-268.3, his operator's license shall be suspended immediately for seven days.

Code § 46.2-391.2(C) provides that any person whose operator's license has been suspended under Code § 46.2-391.2(A) may, during the period of the suspension, request the general

district court where the arrest was made to review the suspension, and the request is given precedence over all other matters on the docket.  If the person proves by a preponderance of the evidence that the arresting officer did not have probable cause for the arrest or that the magistrate did not have probable cause to issue the warrant, the court shall rescind the suspension.  Otherwise, the court shall affirm the suspension.

Code § 18.2-268.3, referred to in Code § 46.2-391.2(A), prescribes the procedures to be followed if a person, after having been arrested for driving under the influence, refuses to permit blood or breath samples to be taken for chemical tests to determine the alcohol or drug content of his blood.  Code § 18.2-268.4 provides that if a person is found guilty of violating Code § 18.2-268.3, the court shall suspend his privilege to drive for a period of one year, in addition to the seven-day suspension imposed under Code § 46.2-391.2.

The record shows that on February 13, 1995, C. D. Preuss, a Virginia Commonwealth University police officer, arrested the defendant, George Brame, in the City of Richmond and charged him in a warrant issued by a magistrate with driving under the influence of alcohol in violation of Code § 18.2-266.  When Brame refused, both at the site of the arrest and at the police station, to take a blood or breath test, Preuss also charged him in a warrant issued by the magistrate with unreasonably refusing to take a blood or breath test, and his license was administratively suspended for seven days pursuant to Code § 46.2-391.2(A).

The next day, Brame filed in general district court a

petition under Code § 46.2-391.2(C) for review of the seven-day suspension of his license. The court denied this petition, thus affirming the suspension.[1]

The warrants charging Brame with driving under the influence and with unreasonably refusing to take a blood or breath test were later tried in general district court. He was found guilty of both charges, and his license was suspended for a period of one year on the charge of unreasonably refusing to take a blood or breath test. On a de novo appeal to circuit court, Brame was found not guilty of driving under the influence but guilty of unreasonably refusing to take a blood or breath test, and his license was again suspended for a period of one year.

Because a charge of unreasonably refusing to submit to a blood or breath test is not criminal but administrative and civil in nature, an appeal lies directly to this Court. Commonwealth v. Rafferty, 241 Va. 319, 323-24, 402 S.E.2d 17, 20 (1991). Upon Brame's petition, we awarded him an appeal.

DOUBLE JEOPARDY

Citing United States v. Halper, 490 U.S. 435 (1989), Brame points out that "the Double Jeopardy Clause 'protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense.'" Id. at 440. Brame then states that "[a]s was the case in Halper, it

---

[1]In a brief filed in the trial court, Brame stated that the general district court conducted a hearing on his petition the same day it was filed.

is the third of these protections [,_i.e._, the prohibition against multiple punishments,] which is at issue here."

Brame also points out that <u>Halper</u> establishes a three-pronged analysis for determining whether a person has suffered impermissible multiple punishments. Under this analysis, Brame says, a person suffers impermissible multiple punishments if the two sanctions result from the same offense, the second sanction is imposed in a separate proceeding, and both sanctions constitute punishment in the double jeopardy sense.

For the purposes of this appeal, we will assume, without deciding, that Brame's two sanctions resulted from the same incident and that the subsequent sanction was imposed in a separate proceeding. This leaves for decision only the question whether the suspension of Brame's operator's license for refusal to submit to a blood or breath test constitutes punishment for double jeopardy purposes.

Brame relies heavily upon <u>Halper</u> to support his contention that his license suspension does constitute punishment. There, the defendant was convicted of submitting 65 false claims for reimbursement of Medicare benefits and was sentenced to imprisonment for two years and to pay a fine of $5,000. The Government then brought an action under the civil False Claims Act, in which the defendant could have been subjected to a civil penalty of $2,000 for each of the 65 claims for a total of $130,000, plus twice the amount of the Government's actual damages of $585 and costs of the civil action.

The district court found that the authorized recovery of more

than $130,000 bore no rational relation to the Government's actual loss plus its costs in investigating and prosecuting the defendant's false claims and that imposition of the full amount would violate the Double Jeopardy Clause by punishing the defendant twice for the same conduct. To avoid this violation, the district court entered judgment in favor of the Government for only twice the amount of its actual damages of $585 plus the costs of the civil action.

The Government appealed directly to the United States Supreme Court, which noted probable jurisdiction to decide the question "whether and under what circumstances a civil penalty may constitute 'punishment' for the purposes of double jeopardy analysis." Id. at 436. Previously, the Court had given deference to the labels Congress placed upon statutes and had classified as nonpunitive those sanctions labelled as civil. Helvering v. Mitchell, 303 U.S. 391, 404-05 (1938). In Halper, however, the Court stated that "the labels 'criminal' and 'civil' are not of paramount importance," 490 U.S. at 447, and, for the first time, held that the imposition of a civil sanction following a criminal conviction and sentence could implicate the Double Jeopardy Clause. Id. at 448-49.

The Court observed that "in a particular case a civil penalty . . . may be so extreme and so divorced from the Government's damages and expenses as to constitute punishment." Id. at 442. The Court stated it was announcing "a rule for the rare case . . . such as the one before [it]," a rule providing that a civil penalty must bear a "rational relation to the goal of compensating

the Government for its loss" else the penalty will constitute an impermissible second punishment.  Id. at 449-50.

The Court stated it agreed "with the District Court that the disparity between its approximation of the Government's costs and Halper's $130,000 liability is sufficiently disproportionate that the sanction constitutes a second punishment in violation of double jeopardy."  Id. at 452.  However, the Court remanded the case "to permit the Government to demonstrate that the District Court's assessment of its injuries was erroneous."  Id.

Brame asserts that the Supreme Court held in Halper that "any civil sanction which is not exclusively 'remedial' will implicate the protection of the double jeopardy clause."  However, we do not find this precise language in Halper.  While there is a statement in the Halper opinion that may give Brame comfort,[2] that statement is inconsistent with the specific holding of the Court, and the language of the holding belies Brame's suggestion that a civil sanction must be exclusively remedial to pass constitutional muster.  This is the way the Court phrased its holding:

> We . . . hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not  fairly be characterized as remedial, but only as a deterrent or retribution.

Id. at 448-49 (emphasis added).

---

[2] "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term."  490 U.S. at 448.  This statement was criticized later by the Supreme Court in United States v. Ursery, infra.

We read this language to mean that if a given sanction may be characterized <u>only</u> as a deterrent or retribution, it runs afoul of the Double Jeopardy Clause, but if it may fairly be characterized as remedial, even though it incidentally serves the purposes of deterrence and retribution, it does not offend the Clause. And we think a decision of the Supreme Court subsequent to <u>Halper</u> makes clear that a particular sanction need not be exclusively remedial to avoid violating the Double Jeopardy Clause.

In <u>United States v. Ursery</u>, ___ U.S. ___, 116 S.Ct. 2135 (1996), the Supreme Court considered the question whether the Double Jeopardy Clause prohibits the Government from both punishing a defendant for a criminal offense and forfeiting his property for the same offense in a separate proceeding. ___ U.S. at ___, 116 S.Ct. at 2138. The Court answered the question in the negative. In the course of his opinion for the majority, Chief Justice Rehnquist responded to an assertion made by Justice Stevens in dissent that <u>Halper</u> had established a general rule under which a civil sanction must solely serve a remedial purpose to avoid violating the Double Jeopardy Clause. The Chief Justice wrote:

> Whether a particular sanction "cannot fairly be said <u>solely</u> to serve a remedial purpose" is an inquiry radically different from that we have traditionally employed in order to determine whether, as a categorical matter, a civil sanction is subject to the Double Jeopardy Clause. Yet nowhere in <u>Halper</u> does the Court purport to make such a sweeping change in the law, instead emphasizing repeatedly the narrow scope of its decision. . . . If the "general rule" of Justice STEVENS were applied literally, then virtually every sanction would be declared to be a punishment: it is hard to imagine a sanction that has no punitive aspect whatsoever. Justice STEVENS' interpretation of <u>Halper</u> is both contrary to the decision itself and would create

an unworkable rule inconsistent with well-established precedent.

___ U.S. at ___, 116 S.Ct. at 2146 n.2 (citation omitted).

Contrary to an argument made by Brame, we think that the cases of Austin v. United States, 509 U.S. 602 (1993), and Department of Revenue v. Kurth Ranch, 511 U.S. ___, 114 S.Ct. 1937 (1994), decided subsequent to Halper, do not detract from the view that a sanction need not be exclusively remedial to avoid implicating the Double Jeopardy Clause.  Austin is inapposite; it is not a double jeopardy case but, instead, one applying the Excessive Fines Clause of the Eighth Amendment.

Kurth Ranch actually supports the view we take of the matter.  The opinion in Kurth Ranch quotes with approval the specific holding in Halper indicating that a sanction need not be exclusively remedial to avoid implicating the Double Jeopardy Clause.  Kurth Ranch, 511 U.S. at ___, 114 S.Ct. at 1945.  The opinion also states that "an obvious deterrent purpose [does not] automatically [make a sanction] a form of punishment," 511 U.S. at ___, 114 S.Ct. at 1946.  In any event, Ursery counteracts anything that may have been said in either Austin or Kurth Ranch that is at odds with the view that a sanction need not be exclusively remedial to preclude a claim of double jeopardy.[3]

---

[3]In oral argument, Brame cited United States v. $405,089.23 in United States Currency, 33 F.3d 1210 (9th Cir. 1994), along with Halper, Austin, and Kurth Ranch, in arguing that the sanction of administrative license suspension was punitive and not remedial.  However, the Supreme Court reversed the Ninth Circuit's judgment in United States v. $405,089.23 at the same time it reversed the judgment of the Sixth Circuit in United States v. Ursery, cited in the text.

This brings us to the question whether Virginia's license suspension statutes serve a remedial purpose. We think they do.

Any person who operates a motor vehicle upon a highway of this Commonwealth shall be deemed, as a condition of such operation, to have consented to have samples of his blood or breath taken for a chemical test to determine the alcohol or drug content of his blood if arrested for driving while intoxicated. Code § 18.2-268.2.

Any person who is arrested for driving while intoxicated and refuses to submit to a blood or breath test faces two separate and distinct proceedings. One is a criminal action under Code § 18.2-266 for driving while intoxicated, which carries a sanction of fine or imprisonment, or both. The other is a civil and administrative proceeding under Code § 18.2-268.3 for refusing, in breach of the person's implied consent, to allow samples of blood or breath to be taken, which carries the sanction of a one-year license suspension.

The one-year license suspension pursuant to Code § 18.2-268.3 for refusing to permit the taking of blood or breath samples is "'no part of the punishment [for drunk driving nor] is it . . . an added punishment for the offense committed.'" Deaner v. Commonwealth, 210 Va. 285, 290, 170 S.E.2d 199, 203 (1969) (quoting Prichard v. Battle, 178 Va. 455, 462, 17 S.E.2d 393, 395 (1941)). Rather, like the provision for implied consent, the provision for a one-year license suspension is "a measure flowing from the police power of the state designed to protect other users of state highways." Deaner, 210 Va. at 289, 170 S.E.2d at 202.

Hence, we think that the one-year license suspension prescribed by Code § 18.2-268.3 has a clear, overriding remedial purpose and that the same may be said for the seven-day administrative suspension prescribed by Code § 46.2-391.2. Indeed, this is exactly the view the Court of Appeals of Virginia has adopted concerning administrative license suspension.

In Tench v. Commonwealth, 21 Va. App. 200, 462 S.E.2d 922 (1995), the defendant was convicted for driving while intoxicated after he had suffered a seven-day administrative suspension of his operator's license pursuant to Code § 46.2-391.2. The Court of Appeals affirmed the conviction.[4] Rejecting the defendant's contention that he was twice placed in jeopardy as a result of his license suspension and his subsequent conviction for driving while intoxicated, the Court of Appeals stated as follows:

> The General Assembly's consideration of a procedure for automatic license suspension was motivated by its desire to reduce "alcohol-related crashes, fatalities, and injuries." See S.J.Res. 172, 1989 Va. Acts. Enactment of this procedure was no empty exercise, as states that have enacted such laws have experienced a reduction in alcohol-related crashes and fatalities. We hold that automatic license suspension under Code § 46.2-391.2 is a remedial sanction because its purpose is to protect the public from intoxicated drivers and to reduce alcohol-related accidents.

21 Va. App. at 205, 462 S.E.2d at 924 (footnote omitted).[5]

_____

[4]Tench sought an appeal to this Court, but his petition was dismissed on procedural grounds.

[5]Senate Joint Resolution 172, cited in the Tench opinion, directed several state agencies to study and make a report on the subject of administrative license suspension. Brame argues that it was shown in the report filed as a result of the study that "the motivation for enacting [the administrative suspension] legislation was deterrence of drunk driving." The report cites the testimony of two members of the General Assembly given at public hearings

Furthermore, this view has been adopted by the highest court of every state that has reviewed the double jeopardy aspects of administrative license suspension since Halper was decided. Deutschendorf v. People, 920 P.2d 53 (Colo. 1996); State v. Hickam, 668 A.2d 1321 (Conn. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1851 (1996); State v. Higa, 897 P.2d 928 (Haw. 1995); State v. Talavera, 905 P.2d 633 (Idaho 1995); State v. Kocher, 542 N.W.2d 556 (Iowa 1996); State v. Mertz, 907 P.2d 847 (Kan. 1995); Butler v. Department of Pub. Safety & Corr., 609 So. 2d 790 (La. 1992); State v. Savard, 659 A.2d 1265 (Me. 1995); State v. Jones, 666 A.2d 128 (Md. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1265 (1996); Luk v. Commonwealth, 658 N.E.2d 664 (Mass. 1995); State v. Hanson, 543 N.W.2d 84 (Minn. 1996); State v. Mayo, 915 S.W.2d 758 (Mo. 1996); State v. Hansen, 542 N.W.2d 424 (Neb. 1996), cert. denied, ___ U.S. ___, 116 S.Ct. 2509 (1996); State v. Cassady, 662 A.2d 955 (N.H. 1995); State v. Kennedy, 904 P.2d 1044 (N.M. 1995); State v. Zimmerman, 539 N.W.2d 49 (N.D. 1995); State v. Strong, 605 A.2d 510 (Vt. 1992).

We especially note and concur in an observation made by the Supreme Court of Vermont in State v. Strong: "[A] 'bright line'

has developed [in the decisions] because the nonpunitive purpose
(..continued)
conducted by a task force formed by the agencies directed by
SJR 172 to make the study.  However, while one of these
members used the word "deter" once, it is obvious that both
members were merely offering their own opinions on the
subject under study.  The only real evidence of "motivation"
is found in SJR 172 itself, where it is noted that "twenty-
three states have enacted administrative revocation laws and
subsequently experienced a significant reduction in alcohol-
related crashes, fatalities and injuries."  This speaks much
louder of remedy than deterrence.

of the [administrative] license suspension is so clear and compelling. We see nothing in Halper that induces us to cross that line." 605 A.2d at 514.

Similarly, the remedial purpose of Virginia's seven-day administrative suspension provision is so clear and compelling that it overrides any incidental punitive effect the provision may have. Accordingly, we have no difficulty in holding that Brame's rights under the Double Jeopardy Clause were not violated by the subsequent judicial suspension of his license for one year.

Brame contends, however, that the inquiry does not end with the Double Jeopardy Clause. He argues that Code § 19.2-294 "provides [him] a separate protection against double jeopardy."

In pertinent part, this Code section reads:

> If the same act be a violation of two or more statutes, or of two or more ordinances, or of one or more statutes and also one or more ordinances, conviction under one of such statutes or ordinances shall be a bar to a prosecution or proceeding under the other or others.

The ready answer to Brame's argument is that this Court has already interpreted the foregoing statute adversely to his position. Quidley v. Commonwealth, 190 Va. 1029, 59 S.E.2d 52 (1950), involved a gaming conviction and a proceeding to forfeit property. There, the accused contended that § 4775 of the Code of 1942, now Code § 19.2-294, barred the forfeiture proceeding.

Rejecting the contention, this Court held as follows:

> [S]ection 4775 . . . is applicable only to criminal proceedings. The proceeding to forfeit property is against the property and not against the owner of the property or any other person. It is in rem wholly and not in personam. It is not a criminal proceeding. It is a civil case.

*Id.* at 1036, 59 S.E.2d at 56. Here, Brame's administrative license suspension is not a criminal proceeding. It is a civil proceeding and, hence, could not serve as a bar to a proceeding under Code § 18.2-268.3 for refusing to submit to a blood or breath test, which is itself civil in nature.

Brame argues further that because he was found not guilty of driving while intoxicated, there is no rational relationship between his administrative license suspension and the need to protect the public from intoxicated drivers. What Brame overlooks, however, is that his arrest for driving while intoxicated was based upon probable cause, as determined by the magistrate and confirmed by the general district court. Hence, at the time of his arrest, Brame posed at least a potential threat to the safety of others using the highway, a potentiality whose existence was unaffected by the subsequent acquittal on the charge of driving while intoxicated. Brame further overlooks the fact that he was also arrested for refusing to submit to a blood or breath test notwithstanding his implied consent to take such a test, a refusal that survived the subsequent acquittal on the drunk driving charge. There was a rational relationship, therefore, between Brame's administrative license suspension and the need to protect the public from intoxicated drivers and those who refuse to honor their assumed obligations.

Brame also argues that the legislative choice of seven days for an administrative suspension is arbitrary, bearing no rational relationship to any remedial purpose of protecting the public. The arbitrariness is apparent, Brame says, when it is considered

that alcohol in the blood stream tends to dissipate within several hours of consumption, making the suspension sanction, in the words of Halper, "so divorced from any remedial goal that it constitutes 'punishment' for the purpose of double jeopardy analysis." 490 U.S. at 443.

We disagree. The length of the period necessary to protect the safety of the public in this situation is a matter within the sound discretion of the General Assembly. It can hardly be said the discretion has been abused in light of the fact that Virginia's seven-day period is shorter than any of the periods considered in the out-of-state cases listed above, where double jeopardy claims similar to those advanced here were rejected. Indeed, the majority of the states listed have suspension periods of ninety days or more and, in some instances, substantially longer than ninety days.

## DUE PROCESS

Brame's entire due process claim is based upon the proposition that because the arresting officer did not appear at the hearing in general district court, he did not have the opportunity to cross-examine the officer. However, Brame certainly had the opportunity to secure the officer's testimony by requesting his voluntary appearance or obtaining a subpoena compelling his attendance. Yet, so far as the record shows, Brame made no effort whatsoever to procure the officer's presence. In the absence of any such effort, Brame has no standing to complain.

For the reasons assigned, we will affirm the judgment of the trial court.

<u>Affirmed</u>.