COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Alston and Russell
Argued at Alexandria, Virginia

UNPUBLISHED

AHMED RIYADH ALOUDAH

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0328-17-4                      CHIEF JUDGE GLEN A. HUFF
                                                    FEBRUARY 13, 2018

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                            Nolan B. Dawkins, Judge

        Claire C. Schulmeister, Assistant Public Defender, for appellant.

        Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
        Herring, Attorney General, on brief), for appellee.


        Ahmed Riyadh Aloudah ("appellant") appeals his conviction of misdemeanor driving

under the influence ("DUI"), in violation of Code § 18.2-266. Following a bench trial in the

Circuit Court of the City of Alexandria ("trial court"), the trial court sentenced appellant to 179

days in jail, with all but the mandatory minimum five days suspended, and a mandatory

minimum fine of $250. On appeal, appellant contends that the trial court erred in four ways:

(1) admitting preliminary breath test results supported by an insufficient foundation, (2) denying

his motion to suppress blood test results obtained through a warrantless search, (3) finding the

evidence sufficient to prove that he was driving while intoxicated, and (4) denying his request for

a deferred disposition on the grounds that it lacked the authority to do so. For the following

reasons, this Court affirms appellant's conviction.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  BACKGROUND

On appeal, "we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)).  So viewed, the evidence is as follows.

Alexandria police officer Reid Hudson responded to a call for service at Sheffield Court during the early morning hours of April 14, 2016.  Upon arrival, he observed appellant in the driver's seat of a vehicle parked in the Sheffield Court lot with its lights on.  Appellant began driving away as Hudson received further information indicating that the service call's subject was leaving Sheffield Court in the vehicle he had just observed.  Hudson then began following appellant without lights or sirens.  Hudson observed appellant cross three lanes of traffic without using a turn signal, then cross the left yellow line such that the vehicle's tire was entirely across the line, and nearly hit a construction barrel as he drifted back to the right.  At this point, Hudson activated his emergency lights and sirens to stop appellant.  Rather than immediately pulling over, however, appellant merely slowed down, moved to the right lane, and turned off on another road before stopping.

Hudson approached appellant and asked where he was coming from.  During their conversation, Hudson detected a "moderate" smell of alcohol on appellant's breath and observed a bleeding, open wound on his knee.  Appellant indicated he would like medical attention for the wound, so Hudson summoned an ambulance.  While waiting for it to arrive, Hudson asked appellant if he had consumed any alcohol.  Appellant indicated that he had one beer "several hours ago" at "about 4:00 o'clock in the afternoon."

Although the conversation thus far had occurred in English, appellant indicated that he was more comfortable communicating in Arabic. Hudson then summoned Officer Sharif, a native Arabic speaker, to act as translator. It was about 2:00 a.m. when Sharif arrived on scene. Medical personnel also arrived and, determining that appellant's injury would require further medical attention, began preparing appellant for transport to NOVA Alexandria Hospital by ambulance.

Once appellant was inside the ambulance, but before it departed for the hospital, Hudson and Sharif conducted a preliminary breath test of appellant. Before administering the test, Sharif provided appellant information about the test in Arabic translated from a police department-issued card, advising appellant that he was suspected of driving under the influence of alcohol, that he had the right to refuse the test, and that neither his refusal nor the result could be admitted as evidence in a DUI prosecution. After listening to the information, appellant agreed to take the preliminary breath test. Both Hudson and Sharif were trained in performing preliminary breath tests, and Hudson indicated that he followed that training when administering the test. The test indicated that appellant's blood alcohol content was 0.15%.[1] Based on this result, as well as his previous observations of appellant, Hudson advised appellant that he was under arrest for DUI. At this point, twenty minutes had elapsed from the time he had observed appellant driving.

After appellant arrived and received treatment at the hospital, Sharif provided him information in Arabic regarding Virginia's implied consent statute, including that "[c]onviction for unreasonably refusing to submit to any chemical test constitutes grounds for suspension of

---

[1] The transcript states that the preliminary breath test returned a result of "Twenty-one-five," which appears to be a scrivener's error. Counsel for appellant did not object to the testimony relating to the result, nor did she object to the Commonwealth's written characterization of the result as "0.15" in a pleading below.

the privilege to operate a motor vehicle in this Commonwealth for a period of one year," by translating from a police department-issued card. Hudson then asked appellant in English whether he consented to a blood draw, to which appellant replied "yes, [I] only had one beer." Hudson explained that a blood draw was necessary to test appellant's blood alcohol content because the only breath-testing instrument appropriate for use in implied consent testing that he was aware of was located at the jail, which was located 3.8 miles away from the hospital and thus "wasn't available." He clarified that he did not offer appellant the opportunity to have a breath test using the machine at the jail because "[w]e were going to the hospital in an ambulance, we're not going to stop at jail."

After being convicted of DUI in general district court, appellant noted his *de novo* appeal to the trial court. Before trial, he moved to suppress the results of the warrantless blood test, which the trial court denied. The evidence from the suppression hearing, with the exception of the preliminary breath test result, was incorporated into the trial. At trial, the Commonwealth offered into evidence the certificate of analysis for appellant's blood test as well as testimony by a forensic toxicologist who analyzed appellant's blood. The blood test indicated that appellant's blood alcohol content was 0.164%.

At the close of the Commonwealth's evidence, appellant moved to strike the evidence, which the trial court denied. The defense did not present evidence, and after hearing argument, the trial court found appellant guilty of DUI with a blood alcohol content between 0.15 and 0.20%.

Counsel for appellant then asked the trial court to "consider doing a withheld finding" because appellant, a Saudi Arabian citizen, was in the country on a student visa and would graduate in 2018. The Commonwealth argued that the trial court lacked the authority to do so and further noted that the case "involve[d] a mandatory minimum and the [c]ourt has already

- 4 -

made a finding of guilt." Counsel for appellant maintained that "until an order has been signed I don't believe that any finding has officially been made." After a brief recess, the trial court stated:

> I've considered a [suspended imposition of sentence] in this case and I can find no authority to do it. I certainly understand the personal issue that faces this young man . . . [but] the BAC was twice the legal limit and I don't think that the Commonwealth has made any provision for the Court to provide [a suspended imposition of sentence].

The trial court heard additional argument on sentencing, then ruled:

> [I]n this case I don't think I have the authority to [defer disposition]. . . . And again, I think that based on—especially if this were a close case with regard to the BAC that . . . probably would have had some bearing perhaps on my thoughts. But I do have a case with a .16, twice the legal limit.

The trial court then imposed sentence, and this appeal followed.

## II. ANALYSIS

### A. Admissibility of Preliminary Breath Test

Appellant first argues that the preliminary breath test result was inadmissible at the suppression hearing because the Commonwealth provided an insufficient foundation for its accuracy. Because an adequate foundation supported the test result, this Court affirms the trial court's admissibility ruling.

#### 1. Standard of Review

"Appellate courts review evidentiary rulings under an abuse of discretion standard." Boone v. Commonwealth, 63 Va. App. 383, 388, 758 S.E.2d 72, 75 (2014). Under this deferential standard, an appellate court will not overturn the trial court's decision merely because it disagrees with the trial court; instead, "only in those cases where 'reasonable jurists could not differ' has an abuse of discretion occurred." Campos v. Commonwealth, 67 Va. App. 690, 702, 800 S.E.2d 174, 180 (2017) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607

S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005)).  To the extent this inquiry requires statutory interpretation, this Court reviews such questions of law *de novo*.  Woodard v. Commonwealth, 287 Va. 276, 280, 754 S.E.2d 309, 311 (2014).

2.  Merits

Code § 18.2-267, which governs the administration and admissibility of preliminary breath tests, provides in relevant part:

> Any person who is suspected of [driving while intoxicated] shall be entitled, if such equipment is available, to have his breath analyzed to determine the probable alcoholic content of his blood. . . . His breath may be analyzed by *any police officer* of the Commonwealth, or of any county, city or town, or by any member of a sheriff's department *in the normal discharge of his duties*.

Code § 18.2-267(A) (emphasis added).  If the test indicates the presence of alcohol in the person's blood, then a police officer "may charge the person" with a DUI offense.  Code § 18.2-267(D).  "The purpose of the statute is "to permit a preliminary analysis of the alcoholic content of the blood of a person suspected of [DUI]."  Code § 18.2-267(E).  The statute "provides a mechanism to resolve a potential on-the-scene dispute between the police and the accused concerning the alcoholic content of the blood of the accused.  It is, however, a purely voluntary mechanism and no penalties attach to a refusal to submit to these tests."  Jones v. Town of Marion, 28 Va. App. 791, 794, 508 S.E.2d 921, 923 (1999) (quoting Farmer v. Commonwealth, 12 Va. App. 337, 343, 404 S.E.2d 371, 374 (1991) (Koontz, C.J., dissenting)).  Likewise, if the accused consents to the test, its results "'shall not be admitted into evidence in any prosecution' which determines guilt or innocence" of a DUI offense.  Woolridge v. Commonwealth, 29 Va. App. 339, 347, 512 S.E.2d 153, 157 (1999) (quoting Code § 18.2-267(E)).  The result, however, *is* admissible in pretrial probable cause or suppression hearings, as these are not "prosecution[s]" within the statute's meaning.  Stacy v. Commonwealth, 22 Va. App. 417, 423-24, 470 S.E.2d 584, 587 (1996).

The General Assembly has thus "recognized that this test is reasonably trustworthy to show that a person has consumed alcohol for purposes of determining whether probable cause exists to make an arrest," id. at 421, 470 S.E.2d at 586, but not reliable enough to serve as direct evidence of criminal liability. Compare Code § 18.2-267(E) (precluding admission of preliminary breath test results in prosecutions) with Code § 18.2-268.9(A) (permitting admission of breath analysis results in prosecutions only if administered by licensed individuals using approved equipment and methods). Preliminary breath tests have a correspondingly lower bar for result admissibility: their results are admissible at a suppression hearing if the preliminary test was performed by "any police officer . . . in the normal discharge of his duties." Code § 18.2-267(A).

The statute does require the Department of Forensic Science to "determine the proper method and equipment" for preliminary tests and "advise the respective police . . . departments of the same," but unlike the chemical analyses admissible at trial under Code § 18.2-268.9, it does not condition admissibility of results on proven strict compliance with the regulations. Code § 18.2-267; see Saunders v. Commonwealth, 48 Va. App. 196, 203-04, 629 S.E.2d 701, 704 (2006) ("When interpreting statutory language, we must assume that the legislature chose with care the words it used and, where it includes specific language in one section but omits that language from another section, we presume that the exclusion of the language was intentional."). As such, the Commonwealth had no obligation to "establish that the test was administered in compliance with the operational procedures set forth in the instrument's instruction manual, that preventive maintenance and repairs were done, or that the device had been regularly calibrated," as appellant contends.

Here, the evidence established that Hudson used a preliminary breath testing device approved for use by the Department of Forensic Science, that he learned to operate the

preliminary breath testing device during field training, and that he administered the test to appellant in accordance with his training. These facts provided a sufficient foundation that Hudson performed the preliminary breath test in "the normal discharge of his duties" using "the proper method and equipment," as required by the statute. Code § 18.2-267(A), (B). Accordingly, this Court holds that the trial court did not err in admitting the result at the suppression hearing.

### B. Suppression of Blood Test Results

Appellant next contends that the trial court erred in denying his motion to suppress the blood test result because the test constituted a warrantless search not subject to any exception. Because the test was justified under Virginia's implied consent statutory scheme, this Court affirms the trial court's ruling.

### 1. Standard of Review

"A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that an appellate court must review de novo on appeal." Commonwealth v. Robertson, 275 Va. 559, 563, 659 S.E.2d 321, 324 (2008). In undertaking this inquiry, this Court defers to the trial court's factual findings but independently determines whether the manner in which the evidence was obtained satisfies the Fourth Amendment's requirements. Bolden v. Commonwealth, 263 Va. 465, 470, 561 S.E.2d 701, 704 (2002). "The defendant has the burden to show that, when viewing the evidence in the light most favorable to the Commonwealth, the trial court's denial of the motion to suppress was reversible error." Sidney v. Commonwealth, 280 Va. 517, 522, 702 S.E.2d 124, 127 (2010).

### 2. Merits

Blood tests performed on persons accused of DUI are searches within the meaning of the Fourth Amendment that must be supported by a warrant or warrant exception in order to comply

with the Constitution.  <u>Missouri v. McNeely</u>, 569 U.S. 141, 148-49 (2013).  The Commonwealth

relies on Virginia's implied consent statute as the requisite warrant exception.  That statute

provides, in relevant part:

> Any person . . . who operates a motor vehicle upon a highway . . .
> in the Commonwealth shall be deemed thereby, as a condition of
> such operation, to have consented to have samples of his blood,
> breath, or both blood and breath taken for a chemical test to
> determine the alcohol, drug, or both alcohol and drug content of
> his blood, if he is arrested for [a driving while intoxicated offense]
> within three hours of the alleged offense.
>
> Any person so arrested . . . shall submit to a breath test.  If the
> breath test is unavailable or the person is physically unable to
> submit to the breath test, a blood test shall be given.

Code § 18.2-268.2(A), (B).  Two conditions must therefore be met in order for the statute to

support a blood test:  the person must be arrested for DUI within three hours of the alleged

offense occurring, and either the breath test must be unavailable or the person must be physically

unable to submit to the breath test.  The necessary conditions are present in this case.

### a.  Lawful Arrest

"[F]or an arrestee to be deemed to have given implied consent under Code § 18.2-268.2,

the arrest must have been lawful."  <u>Smith v. Commonwealth</u>, 32 Va. App. 228, 233, 527 S.E.2d

456, 459 (2000).  "Probable cause for a warrantless arrest 'exists when the facts and

circumstances within the officer's knowledge, and of which he has reasonably trustworthy

information, alone are sufficient to warrant a person of reasonable caution to believe that an

offense has been or is being committed.'"  <u>Hairston v. Commonwealth</u>, 67 Va. App. 552, 561,

797 S.E.2d 794, 799 (2017) (quoting <u>Buhrman v. Commonwealth</u>, 275 Va. 501, 505, 659 S.E.2d

325, 327 (2008)).  In determining whether probable cause to arrest exists, this Court looks at the

totality of the circumstances surrounding "the events leading up to the arrest, and then decide[s]

'whether these historical facts, viewed from the standpoint of an objectively reasonable officer,

amount to' probable cause."  Id. at 562, 797 S.E.2d at 799 (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)).

Here, in addition to the preliminary breath test indicating that appellant had a blood alcohol content of 0.15%, nearly twice Virginia's limit of 0.08%, Hudson also observed appellant driving erratically and smelled an odor of alcohol on his breath.  Moreover, appellant told Hudson that he had consumed alcohol earlier in the day.  Taken together, these facts established probable cause to support appellant's arrest on suspicion of DUI.

b.  Unavailability of Breath Test

The Commonwealth bears the burden of establishing either that a breath test is "unavailable" or that the defendant is physically unable to submit to the breath test before compelling an arrestee to take a blood test.  Wolfe v. Commonwealth, 67 Va. App. 97, 106, 793 S.E.2d 811, 815 (2016).  The bar for establishing either condition is not high.  For instance, our Supreme Court has previously found that a breath test was unavailable when a sheriff's office simply failed to have a licensed breath test operator on duty at the time of a defendant's arrest. Commonwealth v. Gray, 248 Va. 633, 637, 449 S.E.2d 807, 810 (1994).  Likewise, this Court has held that a defendant's continued burping after being advised that doing so would necessitate a blood rather than breath test was a circumstance sufficient to render him unable to submit to a breath test.  Wolfe, 67 Va. App. at 107, 793 S.E.2d at 816.  This latter holding implicitly recognizes the importance of timely testing in order to preserve evidence of DUI.  See Birchfield v. North Dakota, 136 S. Ct. 2160, 2182 (2016) (noting that the government's interest in "preserving evidence or preventing its loss readily encompasses the inevitable metabolization of alcohol in the blood").

In this case, Hudson testified that the only breath-testing machine approved by the Department of Forensic Science for use in implied-consent testing was located at the Alexandria

- 10 -

jail. He believed that the machine "wasn't available" to him because, at the time of arrest, appellant was bleeding from an open wound that medical personnel had determined required treatment at the hospital. Hudson reasonably determined that he could not postpone appellant's necessary treatment by requiring the ambulance to detour by the jail for a breath test—as he put it, "[w]e were going to the hospital in an ambulance, we're not going to stop at jail." To hold that the breath test was available on these facts would put police officers like Hudson in the impossible place of having to decide whether a defendant's entitlement to medical treatment or a breath test is more important; either choice would be open to criticism given the time-sensitive nature of both options. See Williams, 49 Va. App. at 451, 642 S.E.2d at 301 ("Although we review police actions from the standpoint of a hypothetical 'reasonable' officer, we must measure those actions from the foresight of an officer acting in a quickly developing situation and not from the hindsight of which judges have benefit." (quoting State v. Brannan, 474 S.E.2d 267, 270 (Ga. Ct. App. 1996))). Accordingly, this Court holds that appellant's need for medical attention rendered the breath test unavailable.

Appellant, relying on Birchfield, contends that his consent to the blood draw was involuntary because the term "conviction" was included in the form read pursuant to Code § 18.2-268.3 and thus rendered the circumstances coercive. The term "conviction" can apply in either civil or criminal contexts. See, e.g., Deaner v. Commonwealth, 210 Va. 285, 288, 293, 170 S.E.2d 199, 201, 204 (1969) (citing prior implied consent statute and holding that proceeding leading to "conviction" of unreasonable refusal is civil and not criminal in nature), cited with approval in Eames v. Rocky Mount, 217 Va. 16, 17, 225 S.E.2d 197, 198 (1976); see also Cash v. Commonwealth, 251 Va. 46, 48, 466 S.E.2d 736, 737 (1996) (involving appeal of "conviction" of civil refusal charges). In the instant case, if appellant had unreasonably refused the blood draw, no criminal sanctions would have applied. Code § 18.2-268.3(B)(iii)

("[U]nreasonable refusal . . . constitutes grounds for the revocation of the privilege of operating a motor vehicle."). The holding in Birchfield should not be read to cast doubt on "laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply." Birchfield, 136 S. Ct. at 2185.

Because appellant was lawfully arrested and the breath test was unavailable, the implied consent statute justified the blood test. As such, the test did not violate appellant's Fourth Amendment rights, and the trial court did not err in denying appellant's motion to suppress the test's result.

## C. Sufficiency of the Evidence

In his third assignment of error, appellant argues that the evidence was insufficient to prove that he was driving while intoxicated. Because the evidence was sufficient to establish appellant's guilt under either theory advanced by the Commonwealth, this Court affirms the trial court's denial of appellant's motion to strike.

### 1. Standard of Review

"When the sufficiency of the evidence is challenged on appeal, this Court 'must affirm the conviction unless it is plainly wrong or without evidence to support it.'" Gerald v. Commonwealth, 68 Va. App. 167, 172, 805 S.E.2d 407, 410 (2017) (quoting Spencer v. City of Norfolk, 271 Va. 460, 463, 628 S.E.2d 356, 358 (2006)). Under this familiar standard of review, "[a]n appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id.

2. Merits

Code § 18.2-266, Virginia's definitional DUI statute, sets forth two theories of guilt for driving while intoxicated by alcohol: *per se* intoxication, under which proof that a person drove or operated a vehicle while having a blood alcohol concentration of 0.08% or more is sufficient to establish guilt, and actual impairment, under which proof that the accused is "under the influence of alcohol" is needed to establish guilt. Code § 18.2-266(i), (ii); see generally Beckham v. Commonwealth, 67 Va. App. 654, 660-66, 799 S.E.2d 689, 692-96 (2017) (discussing proof requirements for *per se* and impairment provisions). If proceeding under a *per se* theory, the inquiry

> is not whether a driver was in fact "under the influence of alcohol" to a degree that his ability to drive safely was affected; rather, the issue is whether at the time he was driving his blood alcohol concentration was at least [.08] percent as measured by a subsequently administered chemical test.

Beckham, 67 Va. App. at 665, 799 S.E.2d at 695 (quoting Davis v. Commonwealth, 8 Va. App. 291, 298, 381 S.E.2d 11, 15 (1989)). Under an actual impairment theory, however, the prosecution may "prove its case without resort to chemical testing" by proving the driver's impairment "based on 'all of the evidence of [the accused's] condition at the time of the alleged offense.'" Id. at 662, 799 S.E.2d at 693 (quoting Leake v. Commonwealth, 27 Va. App. 101, 109, 497 S.E.2d 522, 526 (1998)). "Because individuals vary in how they outwardly manifest intoxication, 'the difficulty of establishing proof beyond a reasonable doubt that a person was under the influence of alcohol, and conversely, the difficulty of defending against an unwarranted charge, are readily apparent.'" Id. (quoting Davis, 8 Va. App. at 296, 381 S.E.2d at 13). To surmount these difficulties, the General Assembly has provided that if a driver's blood alcohol content is 0.08% or higher at the time of testing, then there is a rebuttable presumption

that "the accused was under the influence of alcohol intoxicants at the time of the alleged offense." Id. at 662-63, 799 S.E.2d at 693-94 (quoting Code § 18.2-269(A)(3)).

In this case, appellant was charged under both theories of guilt. See Code § 18.2-266 ("A charge alleging a violation of this section shall support a conviction under clauses (i), (ii), (iii), (iv), or (v)."). The Commonwealth met its burden under the *per se* theory by introducing evidence that appellant was driving and that shortly after the driving, a test of his blood indicated that his blood alcohol concentration was 0.164%. From these facts, the fact finder could reasonably infer that appellant's blood alcohol concentration was greater than 0.08% while he was driving. See Davis, 8 Va. App. at 300, 381 S.E.2d at 15 ("[W]here no alcohol is consumed between the time of driving and the time the chemical test is administered the test results can reflect only that alcohol consumed before or during driving."). Likewise, under the actual impairment theory, the blood test result entitled the Commonwealth to the statutory presumption that appellant was under the influence of alcohol while he was driving. The Commonwealth additionally introduced evidence of appellant's alcohol-impaired driving ability through Hudson's testimony that appellant drove erratically, nearly striking a construction barrel, and had a moderate smell of alcohol on his breath. These facts were sufficient to establish appellant's guilt under the actual impairment theory. Accordingly, this Court holds that the trial court's finding that appellant violated Code § 18.2-266 was not plainly wrong or without evidence to support it under either the *per se* or actual impairment theory of guilt.

## D. Grounds for Denying Deferred Disposition

In his final assignment of error, appellant argues that the trial court erred in refusing to defer disposition of his case on the grounds that it lacked the authority to do so. Assuming without deciding that the trial court erred in so concluding, this Court finds that error to be

harmless because the trial court indicated that it would not defer disposition of this case even if it believed it had that authority.

"Whether a trial court has authority to take a case under advisement and defer a finding of guilt is a question of law that we review *de novo* on appeal." White v. Commonwealth, 67 Va. App. 599, 604, 798 S.E.2d 818, 820 (2017). Although "[t]o say that the law on this issue is unclear is an understatement," id. at 614, 798 S.E.2d at 825, nothing in the precedent from this Court or our Supreme Court *requires* a circuit court to defer disposition in a particular circumstance—the option of taking a case under advisement remains within the discretion of the circuit court. See generally Starrs v. Commonwealth, 287 Va. 1, 4, 752 S.E.2d 812, 814 (2014) (holding that trial courts "retain the inherent authority to withhold a finding of guilt and defer the disposition" even after entering a guilty plea on the record); Hernandez v. Commonwealth, 281 Va. 222, 226, 707 S.E.2d 273, 275 (2011) ("Until the court enters a written order finding the defendant guilty of a crime, the court has the inherent authority to take the matter under advisement or to continue the case for disposition at a later date."); White, 67 Va. App. at 613, 798 S.E.2d at 825 (recognizing that the trial court "[u]ndoubtedly . . . had inherent authority to defer disposition and continue the case even after" accepting a guilty plea, but holding that such authority "cannot be used as a type of judicial clemency to acquit the accused of a crime proved beyond a reasonable doubt and convict the accused of a lesser crime").

"No trial is perfect, and error will at times creep in." Lavinder v. Commonwealth, 12 Va. App. 1003, 1009, 407 S.E.2d 910, 913 (1991) (quoting Parsons v. Commonwealth, 154 Va. 832, 852, 152 S.E. 547, 554 (1930)). Even where error occurs, however, it "does not affect a verdict if a reviewing court can conclude, without usurping the [fact finder's] function, that, had the error not occurred, the verdict would have been the same." Lavinder, 12 Va. App. at 1006, 407 S.E.2d at 911. As such, even if the trial court erred in determining that it lacked the

authority to defer disposition in this case, this Court can conclude that the trial court's decision would have been the same had it believed it had full authority to defer. The trial court stated that "especially if this were a close case with regard to the BAC that . . . probably would have had some bearing perhaps on my thoughts," but repeatedly indicated that this case was not close because appellant's blood alcohol concentration was "a .16, twice the legal limit." In light of the trial court's statements, this Court concludes that any error by the trial court regarding its authority to enter a deferred disposition was harmless because the trial court would not have exercised that authority in any event.

## III. CONCLUSION

For the foregoing reasons, this Court affirms appellant's conviction.

<u>Affirmed.</u>