COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Humphreys, Decker and Russell
Argued at Virginia Beach, Virginia


AARON MARKEITH GERALD
                                                    OPINION BY
v.        Record No. 0731-16-1              JUDGE ROBERT J. HUMPHREYS
                                                 OCTOBER 17, 2017
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge[1]

Harry Dennis Harmon, Jr., for appellant.

Stephen L. Forster, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Aaron Markeith Gerald ("Gerald") appeals the decision by the Circuit Court of Virginia

Beach ("circuit court") convicting him of discharging a firearm in public under Code § 18.2-280,

brandishing a firearm under Code § 18.2-282, possession of a firearm by a convicted felon in

violation of Code § 18.2-308.2, and revoking a previously suspended sentence based on those

convictions.[2]  Gerald contends that the evidence was insufficient to prove that the object in

question was a "firearm" as defined by law.

---

[1] Judge Leslie L. Lilley presided over the jury trial on July 15, 2014.

[2] While the record is something less than a model of clarity, it appears that this appeal consolidates assignments of error relating to his conviction by a jury on July 15, 2014 of possession of a firearm by a convicted felon and his conviction in a bench trial on November 5, 2014 for the remaining charges and the probation violation, all of which arise out of the same incident.

## I.  BACKGROUND

On May 28, 2013, James Goode ("Goode") dropped off his seventeen-year-old son Michael Ramel Goode ("Ramel") at Scarborough Square, a neighborhood in Virginia Beach, for a visit with Ramel's friend Xavier Browder ("Browder").  Looking back as he drove away, Goode saw that Ramel was "slap boxing" in the middle of the street with an adult, Calvin Scott ("Scott").  Goode returned to Ramel, stopped his vehicle in the street, and got out.  Goode began talking with Scott in an attempt to end the altercation, while ushering Ramel and Browder into his vehicle.  A gunshot interrupted Goode and Scott's conversation.  Turning toward the noise, Goode saw Gerald, a convicted felon, walking toward him.  Gerald, continuing his advance, fired a second gunshot.  Gerald then pointed the gun directly at Goode while he walked to the passenger side of Goode's vehicle where Ramel was sitting.  Gerald pressed the gun into Ramel's thigh and grabbed Ramel's legs, attempting to pull him out of the vehicle.  Goode began pulling on Ramel's arms through the vehicle from the driver's side.  Goode testified he was able to free Ramel from Gerald's grasp, at which point Gerald fired a third shot into the pavement.

Simultaneously, Detective John Belsha, working in an undercover capacity, drove by the scene while investigating another matter.  As he passed Goode's vehicle, Belsha observed an argument between the occupants of the vehicle and a man standing outside the vehicle.  Detective Belsha parked approximately one hundred and fifty feet past Goode's vehicle to observe.  Belsha watched as the physical altercations developed and, as Gerald was pulling Ramel from the vehicle, Belsha observed "a large frame handgun" in Gerald's hand.  Belsha saw that Gerald "point[ed] [the handgun] up, discharge[d] one round, brought the handgun back down, looked at it, and then discharged another round towards the ground."  Detective Belsha testified that, based on his training and experience, such a handgun was "capable of expelling a projectile by the means of explosion."  Gerald and Scott left the scene of the altercation and

entered a nearby townhouse where Shaniqua Rowe ("Rowe"), Gerald's girlfriend and Scott's sister, resided.

Detective Belsha called for a marked police unit to respond. When the second police unit arrived, Gerald, Scott, and the other occupants were ordered out of the house. Once Gerald was in custody, an inspection of the street where the altercation occurred produced two shell casings and bullet fragments in the area where Gerald was standing. The forensic scientist who analyzed the casings testified that they were both fired from the same gun. It was at least thirty minutes before consent to search the townhouse was obtained. During that time, the back door was unsecured and police saw Rowe go into a neighbor's townhouse twice. When the townhouse was eventually searched, no firearm was recovered.

Gerald was convicted by a jury of possession of a firearm by a convicted felon and sentenced to five years in the Virginia State Penitentiary. Gerald was also convicted in a bench trial of discharging a firearm in public and brandishing a firearm, and sentenced to twelve months in jail for each offense and, as a result of these convictions, was also found to be in violation of the terms of his probation.

## II. ANALYSIS

### A. Standard of Review

Because all of Gerald's assignments of error relate to the sufficiency of the evidence to establish that the item at the center of his various convictions and probation revocation was a "firearm" and because the outcome of all of the assignments of error turn on the statutory definition of that term, we consolidate our analysis of his assignments of error to that dispositive issue.

When the sufficiency of the evidence is challenged on appeal, this Court "must affirm the conviction unless it is plainly wrong or without evidence to support it." Spencer v. City of

Norfolk, 271 Va. 460, 463, 628 S.E.2d 356, 358 (2006) (citing Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998)).  This Court must examine the evidence "in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Crest v. Commonwealth, 40 Va. App. 165, 168, 578 S.E.2d 88, 89 (2003) (citing Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997)).

However, whether a statute has been correctly construed is a "question of law which we review *de novo* upon appeal."  Farrakhan v. Commonwealth, 273 Va. 177, 180, 639 S.E.2d 227, 229 (2007) (citing Dowling v. Rowan, 270 Va. 510, 519, 621 S.E.2d 397, 401 (2005)).  "The primary objective of statutory construction is to ascertain and give effect to legislative intent."  Lawlor v. Commonwealth, 285 Va. 187, 236, 738 S.E.2d 847, 875 (2013) (quoting Conger v. Barrett, 280 Va. 627, 630-31, 702 S.E.2d 117, 118 (2010)).  "In interpreting [a] statute, 'courts apply the plain meaning . . . unless the terms are ambiguous or applying the plain language would lead to an absurd result.'"  Baker v. Commonwealth, 284 Va. 572, 576, 733 S.E.2d 642, 644 (2012) (quoting Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 926 (2006)).  "A statute is considered ambiguous 'if the text can be understood in more than one way or . . . lacks clearness or definiteness.'"  Id.  If the term is ambiguous, the court looks to the gravamen of the offense to determine legislative intent.  Id. at 576, 733 S.E.2d at 644-45 (citations omitted).  Further, when criminal statutes are at issue they "must be construed strictly against the Commonwealth and in favor of the accused."  Jones v. Commonwealth, 16 Va. App. 354, 356, 429 S.E.2d 615, 616 (1993) (citing Johnson v. Commonwealth, 211 Va. 815, 819, 180 S.E.2d 661, 664 (1971)).

B.  Definition of Firearm for Purposes of Brandishing:  Code § 18.2-282

Code § 18.2-282 twice describes what is considered a firearm for brandishing purposes. First, generally proscribing pointing, holding, or brandishing "any firearm or any air or gas

operated weapon *or any object similar in appearance, whether capable of being fired or not*, in such manner as to reasonably induce fear in the mind of another."  Code § 18.2-282(A) (emphasis added).  Second, it defines a firearm as "any weapon that will or is designed to or may readily be converted to expel single or multiple projectiles by the action of an explosion of a combustible material."  Code § 18.2-282(C).

Gerald argues that the object described as a gun by both Goode and Detective Belsha merely had the appearance of a firearm.  However, given the plain language of Code § 18.2-282(A) quoted above, this argument erroneously addresses the sufficiency analysis regarding the brandishing offense.  Moreover, the evidence taken in the light most favorable to the Commonwealth shows that Gerald pointed this object at multiple individuals in a manner intended to induce fear based upon its appearance as a weapon apparently capable of firing one or more times.  His actions in doing so are legally sufficient to establish the requisite elements of brandishing a firearm.  Furthermore, in the context of the brandishing offense, the fact that he also actually fired the gun several times merely confirms and corroborates the testimony of Goode and Detective Belsha that the gun was what it appeared to be, and Gerald's actions asserted it was – a firearm – thereby satisfying the statutory description and definition.

C.  Definition of Firearm for Purposes of Discharging:  Code § 18.2-280

Unlike the brandishing statute, Code § 18.2-280, banning the willful discharge of a firearm in public, does not contain its own statutory definition of "firearm."  Gerald's argument requires that we determine that definition as a matter of first impression.  Because no express definition is provided within Code § 18.2-280, and both the General Assembly and the courts have defined firearm differently in different contexts within the Code, we assume without deciding that the term "firearm" in Code § 18.2-280 is ambiguous.  In attempting to discern the intent of the General Assembly, courts turn to related statutes "reading them *in pari materia* with

the statute under consideration, in order to give consistent meaning to the language used by the General Assembly." Armstrong v. Commonwealth, 263 Va. 573, 583, 562 S.E.2d 139, 145 (2002). Further, "[i]t is a common canon of statutory construction that when the legislature uses the same term in separate statutes, that term has the same meaning in each unless the General Assembly indicates to the contrary." Barson v. Commonwealth, 284 Va. 67, 74, 726 S.E.2d 292, 296 (2012) (quoting Jenkins v. Mehra, 281 Va. 37, 48, 704 S.E.2d 577, 583 (2011)). Our Supreme Court adopted this reasoning in Armstrong in defining "firearm" for Code § 18.2-308.2, one of Gerald's convictions at issue here, as "an instrument which was designed, made, and intended to expel a projectile by means of an explosion." Armstrong, 263 Va. at 584, 562 S.E.2d at 145. The Commonwealth argues that we should simply graft the definition of "firearm" provided by the Supreme Court in Armstrong to that term as it is used in Code § 18.2-280.

In considering the Commonwealth's argument, we note that, because of the specific nature of the offense, the Supreme Court in Armstrong explicitly rejected other, broader definitions encompassing any "element of perception by a victim." Id. at 583, 562 S.E.2d at 144. This narrow definition was expressly limited by the Supreme Court to prosecutions for Code § 18.2-308.2. Second, the definition of a "firearm" in Armstrong contrasts with that provided in Code § 18.2-282(A) discussed above, where the functionality of the weapon is incidental to the effect the appearance as a firearm produces in a victim, the gravamen of the offense established by the General Assembly. Code § 18.2-280(A) contemplates the actual discharge of a firearm "in any street in a city or town, or in any place of public business or place of public gathering . . . . " Thus, unlike Code § 18.2-282 discussed above, the gravamen of Code § 18.2-280 is not narrowly limited to the effect of that discharge on an observer. Rather it also includes the physical danger the discharge of a firearm in such a place would pose to the general public. It is axiomatic that an object with the mere appearance of a firearm cannot be

- 6 -

discharged, and including such objects in the definition would impermissibly expand the statute. See Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983) (explaining that penal statutes must be "limited in application to cases falling clearly within the language of the statute"). Given our duty to read statutes *in pari materia*, we note that both Code § 18.2-280 and Code § 18.2-282 are contained in Article 4 of Chapter 7 of Title 18.2 of the Code entitled "Dangerous Use Of Firearms and Other Weapons" and that the definition of "firearm" in Code § 18.2-282(C) clearly serves the intended purpose of Code § 18.2-280. This definition also serves the interest of giving consistent meaning to the language used by the General Assembly in similar statutes. We therefore conclude that the definition of firearm the legislature provided in Code § 18.2-282(C); "any weapon that will or is designed to or may readily be converted to expel single or multiple projectiles by the action of an explosion of a combustible material" is the appropriate definition of "firearm" for the purposes of Code § 18.2-280.

## D. Sufficiency of the Evidence

However, no reasonable definition with respect to any of the offenses here, provides relief for Gerald. He cites Jordan v. Commonwealth, 286 Va. 153, 747 S.E.2d 799 (2013), in support of his argument that the evidence here is insufficient to show that the object he displayed and used was a firearm. No firearm was recovered in Jordan, but the victim was able to give a detailed description of the gun involved, identifying make and caliber. Gerald argues that the lack of such specific identifying qualities in evidence differentiates this case from Jordan and renders the evidence here insufficient. In doing so, Gerald ignores a glaring contrast with Jordan; the gun in Jordan was never fired. There is no need to determine make, model, and caliber when the law requires a weapon designed to "expel single or multiple projectiles" and Gerald demonstrates that capability in front of multiple witnesses, one of whom is an experienced law enforcement officer. Notwithstanding the failure to recover the weapon, it is

difficult to conceive of what more a forensic report from a ballistics examiner could provide regarding the nature of the object Gerald displayed and discharged as a firearm than the testimony in the record before us supplies.

The capability of the weapon to fire was relevant in <u>Jordan</u>, but given that Code § 18.2-280 requires a discharge, and the evidence here is that such discharge occurred multiple times, the evidence taken in the light most favorable to the Commonwealth unquestionably shows that Gerald discharged a firearm in a public place.

III.  <u>CONCLUSION</u>

For the foregoing reasons, we find that the trial court did not err in its conclusion that the evidence was sufficient to support Gerald's convictions pursuant to Code § 18.2-308.2, Code § 18.2-282, and Code § 18.2-280 and, therefore, these convictions support Gerald's probation violation and the revocation of his previously suspended sentence.  Accordingly, the judgment of the circuit court is affirmed.

<u>Affirmed.</u>