UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Russell and Malveaux
Argued at Richmond, Virginia


KELLY A. DICKERSON

MEMORANDUM OPINION[*] BY
v.        Record No. 0821-17-2          JUDGE WESLEY G. RUSSELL, JR.
                                        MAY 8, 2018

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GREENSVILLE COUNTY
W. Allan Sharrett, Judge

Sarah Ashley Link (Link Law Firm, PLLC, on brief), for appellant.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Kelly A. Dickerson, appellant, was convicted of seven counts of felony embezzlement and

twelve counts of misdemeanor embezzlement in violation of Code § 18.2-111.[1]  On appeal, she

does not contest that the embezzlements occurred; rather, she argues that the evidence was

insufficient to establish that she was the perpetrator of the offenses.  We disagree and affirm her

convictions.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Code § 18.2-111 incorporates the monetary limits found in Code §§ 18.2-95 and
18.2-96 by express reference to those statutes.  As a result, an embezzlement is punished as
either grand or petit larceny depending upon the amount embezzled.  At the relevant time, the
grand larceny limit was $200.  Code § 18.2-95.  Accordingly, embezzlements involving more
than $200 were punished as felonies while embezzlements involving less than $200 were
punished as misdemeanors.

BACKGROUND

When examining the sufficiency of the evidence supporting a conviction, "we view the evidence, and all inferences reasonably drawn from it, in the light most favorable to the Commonwealth. 'It is our duty to affirm the trial court's judgment unless that judgment is plainly wrong or without evidence to support it.'" Reid v. Commonwealth, 65 Va. App. 745, 753, 781 S.E.2d 373, 377 (2016) (internal citation omitted) (quoting Muhammad v. Commonwealth, 269 Va. 451, 536, 619 S.E.2d 16, 65 (2005)).

So viewed, the evidence established that appellant worked as an assistant manager at Piggly Wiggly in Emporia in 2015. While reviewing security footage of the cash registers for an unrelated cause, Chris Harris, a Piggly Wiggly produce manager, observed appellant conducting an unusual number of returns under unusual circumstances. On nineteen occasions from August 30 through December 19, 2015, appellant processed returns at the registers without any customers being present.

In some of the transactions, appellant, after keying into the register a numeric value to represent the total number of the item purportedly being returned, scanned the item purportedly being returned. On other occasions, video footage showed appellant simply keying the return into the register without scanning the item. Many of the returns consisted of cans of Similac Alimentum (Alimentum), a type of baby formula for sensitive or sick children. Other returns included grocery items.

All return transactions produced receipts from the store's internal computer system showing the "return," but no corresponding receipts existed for the sale of the items purportedly returned. Despite the lack of corresponding sales for the returns, each register used by appellant "balanced" at the end of the night when the paperwork and bank deposits were prepared.

Although the store's inventory system did not allow for an active tracking of how many items were in stock for a particular item, Harris was able to compile data regarding sales and returns in the relevant time period. Upon request of law enforcement, Harris prepared a document that demonstrated the disparity between items sold and items that appellant "returned." For example, Harris testified that, based on his documentation of inventory, in the time period covering the dates of appellant's return transactions, the store sold only one can of Alimentum, yet appellant processed "returns" for over one hundred cans.

The cashiers at Piggly Wiggly were known to run off each other's registers because they all knew each other's login numbers, resulting in some of the receipts having other cashiers' names on them. Thus, without the video establishing that appellant had in fact processed the returns, the register receipts would make it appear that other cashiers had been making some of the returns. Furthermore, managers and assistant managers are responsible for counting the registers every night and preparing the bank deposit. On the dates of the purported returns, appellant was the closing assistant manager, was responsible for making sure the registers "balanced," and prepared the bank deposits.

Polly Daniel, senior manager during the relevant period, was responsible for training appellant for positions ranging from cashier to assistant manager. Although the two worked together, appellant liked to do office work, so Daniel let her "do the paperwork and stuff." Daniel testified that once appellant was promoted to assistant manager, appellant's duties included making the nightly bank deposit.

Daniel described how the deposit process was supposed to work. A manager or assistant manager, usually appellant, would calculate the drawers at the end of the night, put the money into a bank bag, lock it, and transport it to the bank. Daniel explained that the deposit bag was a cloth bag with a zipper and a lock on it. After being zipped, the lock had to be pushed down to

secure the bag. Accordingly, it was possible to leave the store with the bag zipped closed but not locked, remove cash from the bag, and push the lock closed before dropping the bag off at the bank. Once the bag was locked, however, it could not be opened again without the key. The only other employee who sometimes made bank runs did not have a key to open the deposit bag.

Daniel acknowledged that the key to unlock the bank bags was kept in a drawer in the store office. The office was subject to video surveillance. Daniel testified that she watched all of the office videos and did not observe any unauthorized employee accessing either the key or the safe.[2] Further, she did not observe anyone, including appellant, directly "pocket money" in the office.

Virginia State Police Senior Special Agent Steward Williams assisted the Emporia Police Department in investigating this case. He interviewed appellant, and she denied taking any money from Piggly Wiggly. When confronted with the videos, appellant explained that she normally conducted her returns when it was less busy and no customers were around. She claimed Daniel "normally" told her to process the returns; however, Daniel testified that she never asked appellant to process a return for baby formula and that it was a highly unusual practice to process returns without a customer present.

Appellant testified at trial. The thrust of her testimony is that she had been set up by Daniel, who she claims was the perpetrator of the embezzlement scheme. Appellant acknowledged that she is a convicted felon with forty years "over the top of [her] head."

In convicting appellant, the court concluded:

> Now, it's clear, and the defendant herself admitted, that
> what was taking place here had to be -- the money had to be
> relieved from the bag or there was going to be an overage. There

---

[2] For some of the dates in question, the office videos were introduced into evidence; however, the office videos for other dates were not introduced into evidence. The videos depicting appellant's actions at the various cash registers were introduced for all of the relevant dates.

was no purpose in doing what appeared to be being done, be taking place, if the money wasn't going to be relieved from the bag, because that's the only place the theft could take place.

The court explained that the "locked bag isn't really a locked bag"; it does not automatically lock because it does not need to be "thumb locked" before a manager leaves the store. "You can go anywhere you want and remove money without any difficulty, without any hint or possibility of being seen by anyone." The court then found:

> The [c]ourt has judged the testimony of the witnesses, judged their manner and appearance while testifying, their interest in the outcome of this case, their bias, the way they've testified. It's poured this through the crucible of common sense and it finds, as trier of fact, that Ms. Daniel and Mr. Harris were in fact quite credible and that Ms. Dickerson was asking the [c]ourt to engage in leaps of conjecture that it simply could not do, consistent with maintaining its common sense.

This appeal followed.

## ANALYSIS

"When the sufficiency of the evidence is challenged on appeal, this Court 'must affirm the conviction unless it is plainly wrong or without evidence to support it.'" Gerald v. Commonwealth, 68 Va. App. 167, 172, 805 S.E.2d 407, 410 (2017) (quoting Spencer v. City of Norfolk, 271 Va. 460, 463, 628 S.E.2d 356, 358 (2006)). Under this familiar standard of review, "[a]n appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319).

Appellant was convicted of embezzlement in violation of Code § 18.2-111, which provides that:

> If any person wrongfully and fraudulently use, dispose of, conceal or embezzle any money, bill, note, check, order, draft, bond, receipt, bill of lading or any other personal property, tangible or intangible, which he shall have received for another or for his employer, principal or bailor, or by virtue of his office, trust, or employment, or which shall have been entrusted or delivered to him by another or by any court, corporation or company, he shall be guilty of embezzlement. Proof of embezzlement shall be sufficient to sustain the charge of larceny.

Appellant contends that, although the evidence establishes that the charged embezzlements occurred, the evidence did not eliminate the possibility that someone else committed them. She argues that "multiple people had access to the office while it was unlocked, and with issues concerning the deposit bag remaining unlocked, the safe open, and the petty cash drawers open or unlocked, countless people could have had access to money at any given time . . . ."

Given the video and inventory evidence, it cannot be disputed that appellant completed multiple fraudulent returns without a customer present. Despite the store selling only one can of Alimentum in the relevant period, appellant processed returns for more than one hundred cans. Because no money was removed from the register and given to a customer or other deduction made when the fraudulent returns were processed,[3] the registers necessarily contained more money than the register receipts indicated at the end of the night.[4] Thus, the fact that the store's paperwork reflected that the registers balanced at the end of the night when the bank deposit was

---

[3] In addition to cash returns, returns potentially could be made by customers who purchased items without cash, such as through the use of benefits from the United States Department of Agriculture's Special Supplemental Nutrition Program for Women, Infants, and Children, commonly referred to as WIC. Such transactions that do not involve cash are processed through the use of a card to effectuate the electronic benefits transfer.

[4] In response to a question from the trial court, appellant confirmed that the fraudulent transactions would have created overages in the registers each day.

prepared means that someone involved in processing the registers at the end of the night and making the bank deposit was stealing the money associated with the fraudulent returns.

The evidence also established that only the manager and assistant managers closed the registers and prepared the deposits. On the relevant nights, appellant, who was the person seen on video processing the fraudulent returns, was working, and testimony established that she closed the registers and prepared the deposits.

Recognizing this, appellant offered that Daniel had access to the deposits and testified that she processed the returns in question at the direction of Daniel, her superior. As factfinder, the trial court heard appellant's alternative theory of Daniel as the perpetrator and rejected it, finding the testimony unbelievable and crediting the testimony that implicated appellant.

The law is clear that determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear the witnesses and observe them as they testify. Burnette v. Commonwealth, 60 Va. App. 462, 476, 729 S.E.2d 740, 746 (2012). Accordingly, "where a trial court sitting without a jury hears witnesses testify and observes their demeanor on the stand, it has the right to believe or disbelieve their statements." Wilson v. Commonwealth, 46 Va. App. 73, 87, 615 S.E.2d 500, 507 (2005) (quoting Morning v. Commonwealth, 37 Va. App. 679, 686, 561 S.E.2d 23, 26 (2002)). As a result, the "conclusions of the fact finder on issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the witness'] testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."'" Johnson v. Commonwealth, 58 Va. App. 303, 315, 709 S.E.2d 175, 181 (2011) (alteration in original) (quoting Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991)).

Here, even though appellant testified that she processed the returns at the direction of Daniel and did not embezzle the money, the trial court was entitled to discredit her testimony and

- 7 -

believe the conflicting testimony offered by the Commonwealth. In light of the other evidence presented, the trial court could conclude that appellant committed the offenses.

Appellant also argues that there is no video evidence of her actually taking the money and that other people had access to the places (registers, the office, the bank, etc.) where the money was located at various points in time. The lack of an eyewitness who saw or a video that shows appellant taking the money does not entitle her to an acquittal. "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing." Stamper v. Commonwealth, 220 Va. 260, 272, 257 S.E.2d 808, 817 (1979). "Circumstantial evidence is not viewed in isolation. 'While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (quoting Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991)). Where "[t]he circumstances . . . all concur to form an unbroken chain which links the defendant to the crime beyond a reasonable doubt," the circumstantial evidence is sufficient to support the conviction. Bishop v. Commonwealth, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984).

There is ample evidence in the record for a reasonable factfinder to conclude beyond a reasonable doubt that appellant committed the offenses. It cannot be disputed that she processed the fraudulent returns. Other evidence established that she was responsible for closing the registers, preparing the bank deposits, and taking the deposits from the store to the bank on the relevant nights. Thus, she knew that the registers had to have overages, but still managed to "balance" the registers and have that total match the bank deposits she was to make. Coupling this anomaly with the other evidence, including appellant's access to the deposits when she transported them to the bank, provides a sufficient basis for a reasonable factfinder to conclude

that she committed the offenses.  Accordingly, the trial court did not err in rejecting appellant's hypothesis of innocence.

## CONCLUSION

For the reasons stated above, the trial court did not err in convicting appellant of nineteen counts of embezzlement.  Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>