# COURT OF APPEALS OF VIRGINIA
**Record No. 0937-24-2**

MARTIN MONROE

v.

COMMONWEALTH OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Athey

Argued at Richmond, Virginia

Opinion Issued April 28, 2026

**FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG**
Michael E. McGinty, Judge Designate

Elena Kagan, Assistant Public Defender (Virginia Indigent Defense Commission, on briefs), for appellant.

Kelly L. Sturman, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

**PUBLISHED OPINION BY**
**JUDGE CLIFFORD L. ATHEY, JR.**

Following a revocation hearing held on June 4, 2024, the Circuit Court of the City of Petersburg ("trial court") found Martin Monroe ("Monroe") in violation of the terms and conditions of his probation for: 1) failing to report to his probation officer as instructed and 2) absconding from supervision. As a result, the trial court revoked Monroe's previously suspended sentence of 3 years and 10 months before resuspending all of the previously suspended sentence with the exception of 14 days, which Monroe was required to serve. On appeal, Monroe assigns error to the trial court's finding that he violated his probation by absconding from supervision. In support, Monroe denies that he absconded from supervision after being released

---

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

from incarceration because he failed to report to begin his supervised probation. We affirm the judgment of the trial court.

## I. BACKGROUND[2]

On January 13, 2021, Monroe was arrested for strangulation in violation of Code § 18.2-51.6. The warrant of arrest that was issued several days prior to his January 13, 2021 arrest listed Monroe's residence as an apartment located in Prince George, Virginia. By the time of Monroe's March 18, 2021 grand jury indictment, he was listed as residing in an apartment located in Colonial Heights, Virginia. By September of 2021, Monroe had been found guilty of strangulation as charged in the indictment and had been sentenced to five years' incarceration, with three years and ten months suspended. As a condition of suspending the imposition of three years and ten months of his sentence, the trial court "placed [Monroe] on probation under the supervision of a Probation Officer to commence . . . upon [his] release from incarceration for [a period of] [f]ive (5) years or unless sooner released by the court or by the Probation Officer."

On August 18, 2022, Brandon Massenburg ("Massenburg"), a local probation and parole officer, filed a major violation report ("MVR") in the trial court alleging that Monroe had violated the terms and conditions of his probation. The MVR included a third address, which purported to be Monroe's "[l]ast known [a]ddress." In addition, the MVR listed Monroe's supervision start date as April 21, 2022, and further alleged that Monroe "ha[d] failed to report for orientation to begin his period of supervision." The MVR further alleged that Monroe had

---

[2] "On appeal, '[w]e "view the evidence received at [a] revocation hearing in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate inferences that may properly be drawn from it."'" *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (alterations in original) (quoting *Johnson v. Commonwealth*, 296 Va. 266, 274 (2018)). Applying this familiar principle of appellate review, we will state the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

violated Condition 6 of his supervised probation, which provided: "I will follow the Probation and Parole Officer's instructions and will be truthful, cooperative, and report as instructed." Massenburg also stated that "[o]n May 18, 2022, . . . Monroe failed to call or report to the district office for his scheduled orientation." Massenburg further indicated in the MVR that he had unsuccessfully tried to contact Monroe at his "last reported phone number." Massenburg next alleged that on July 1, 2022, he tried to speak with Monroe again by phone but was only able to leave a message "on . . . Monroe's voicemail," requesting that Monroe contact him "as soon as possible." Massenburg then advised the trial court that on July 28, 2022, a letter was mailed to Monroe's last known address instructing him "to report to the district office for orientation on August 3, 2022 at 9:15 a.m." However, Monroe again failed to report to probation and parole on that date. Massenburg further indicated in the MVR that Monroe had still not contacted him as of August 17, 2022. As a result, Massenburg requested that the trial court issue a capias for Monroe's arrest and further requested that the trial court hold a show cause hearing in order for Monroe to "show cause why his suspended sentence should not be imposed."

A capias for Monroe's arrest was subsequently issued on August 23, 2022. The capias indicated that the address Massenburg included in the MVR as Monroe's "[l]ast known [a]ddress" was an apartment located in Petersburg, Virginia.

Lashawn G. Freeman ("Freeman"), another probation officer in the same district, subsequently filed a major violation addendum ("MVA") in the trial court five months later. In the MVA, Freeman advised the trial court that Monroe had still not contacted the probation office and that, despite "check[ing] . . . local jails and VINE," his whereabouts "remain[ed] unknown." As a result, Freeman alleged that Monroe had also violated Condition 11 of his supervised probation, which provided, "I will not abscond from supervision. I understand I will be considered an absconder when my whereabouts are no longer known to my supervising officer. I

freely, voluntarily and intelligently waive[] any right to extradition if arrested outside of Virginia."

On April 4, 2024, Monroe was arrested based upon the outstanding capias. A commitment order was subsequently entered listing Monroe's original Prince George address.

On June 4, 2024, the trial court held a show cause hearing based on the probation officers' MVR and MVA. During the show cause hearing, Monroe did not contest the admission in evidence of the MVR or MVA. Although Monroe admitted that he could be found in violation of Condition 6, he denied that he violated Condition 11:

> The allegation is that Mr. Monroe never reported to probation.
>
> And then in a subsequent letter, they decided that as a result of him never reporting, they would call that absconding. Our position would be that you can't abscond if you never showed up.
>
> So if he never reported to probation, he can't then abscond from probation. We would argue that he's just in violation of condition six, not condition 11.

In response, the Commonwealth asserted that "[n]ot reporting [to probation], [and] not telling probation your whereabouts are two separate events." The Commonwealth then asked the trial court to find Monroe "in violation of both conditions." The trial court stated that it was "inclined to find that [Monroe] violated both conditions." During the disposition portion of the hearing, the trial court opined, "The idea that it's not absconding if you don't show up -- I mean, that's -- if word gets out that you're placed on supervised -- don't even go to your first meeting because then you'll never be considered an absconder in that space." The trial court subsequently imposed an active sentence consistent with a second technical violation by first revoking Monroe's previously suspended sentence of 3 years and 10 months and then resuspending all but 14 days. Monroe appealed.

## II. ANALYSIS

### A. *Standard of Review*

On appeal from a revocation proceeding, "the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). "A court has abused its discretion if its decision was affected by an error of law or was one with which no reasonable jurist could agree." *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022). "To the extent that [an] appellant's assignment of error raises a question of statutory interpretation, that question is reviewed *de novo* on appeal." *Jacobs*, 61 Va. App. at 535.

### B. *The trial court did not err by finding that Monroe had violated the terms of his probation by absconding from supervision.*

On appeal, Monroe contends that he did not violate the terms of his probation by absconding from supervision in violation of Condition 11[3] because he *never* reported to probation to begin supervision after he was released from incarceration. Relying on Code § 19.2-306.1(A)(x) and two definitions of the word "maintain," Monroe's brief asserts that he did not fail to "maintain contact with the probation officer whereby his whereabouts [were] no longer known to the probation officer" because "[t]he plain meaning of 'maintain' requires the continuation of something that already exists." Hence, Monroe concludes, "a probationer cannot be found to have failed to maintain contact with their probation officer where they were never in contact with their probation officer."[4] We disagree.

---

[3] Code § 19.2-306.1(A)(x) is the statutory equivalent of Condition 11. Code § 19.2-306.1(A)(v) corresponds to Condition 6, the other condition Monroe violated. Monroe leaves his Condition 6 violation uncontested. But, for that technical violation alone, Monroe could not be sentenced to 14 days' active incarceration. *See* Code § 19.2-306.1(C).

[4] Monroe did not cite Code § 19.2-306.1(A)(x) or the dictionary definition of "maintain" in opposing the allegation of a Condition 11 violation at the revocation hearing. We find, however, that his succinct argument to the trial court and his argument to this Court are the same argument

"A trial court has broad discretion to revoke a suspended sentence and probation based on Code § 19.2-306, which allows a court to do so 'for any cause deemed by it sufficient.'" *Allison v. Commonwealth*, 40 Va. App. 407, 411 (2003) (quoting *Davis*, 12 Va. App. at 86). Code § 19.2-306.1, however, "limits the period of active incarceration that a circuit court can impose for what the statute refers to as certain 'technical violations' enumerated under [Code § 19.2-306.1(A)]." *Heart v. Commonwealth*, 75 Va. App. 453, 460-61 (2022) (quoting *Green v. Commonwealth*, 75 Va. App. 69, 78 (2022)). "Whereas Code § 19.2-306(C) does not distinguish between types of violations, Code § 19.2-306.1 creates two tiers of probation violations: (1) technical violations, based on a probationer's failure to do one of ten enumerated actions, and (2) non-technical violations." *Id.* at 466. Code § 19.2-306.1 places limits on active sentences for first and second technical violations, allowing for no term of incarceration upon a first technical violation and granting circuit courts discretion to impose, in some circumstances, up to 14 days of incarceration for a second technical violation. Code § 19.2-306.1(C). In addition, a first technical violation based on a probationer's failure to "maintain contact with the probation officer whereby his whereabouts are no longer known to the probation officer," Code § 19.2-306.1(A)(x), "shall be considered a second technical violation, and any subsequent technical violation also based" thereon "shall be considered a third or subsequent technical violation," Code § 19.2-306.1(C).

"[T]he conduct statutorily defined as technical violations are specific requirements imposed on all probationers supervised by probation officers . . . ." *Diaz-Urrutia v. Commonwealth*, 77 Va. App. 182, 193 (2023). In *Diaz-Urrutia*, this Court held that "a

---

and, therefore, Rule 5A:18 does not bar this appeal. "Although the objecting party need not cite specific legal authority to the trial court in order to rely on it on appeal, he must present the objection itself with sufficient particularity to permit the judge, if he or she agrees, to take necessary action." *Jones v. Commonwealth*, 71 Va. App. 597, 607 (2020). In this case, we find that Monroe did so.

sentencing court must engage in a four-step process to classify the basis of the revocation proceeding before determining what sentence it may impose." *Id.*[5] At the first step, "the court must determine whether 'the violat[ive] conduct matches the conduct [specifically] listed in Code § 19.2-306.1(A).'" *Id.* at 193-94 (second alteration in original) (quoting *Delaune v. Commonwealth*, 76 Va. App. 372, 383, *aff'd*, 302 Va. 644 (2023)). "If so, then the defendant has committed a technical violation and the sentencing limitations found in Code § 19.2-306.1(A) apply, regardless of whether the sentencing court included that conduct as 'another condition' of the defendant's suspended sentence." *Id.* at 194. Hence, we must determine whether Monroe's conduct "matches the conduct" described by Code § 19.2-306.1(A)(x). *Id.* at 193 (quoting *Delaune*, 76 Va. App. at 383). We therefore turn to the statute.

"In interpreting [a] statute, 'courts apply the plain meaning . . . unless the terms are ambiguous or applying the plain language would lead to an absurd result.'" *Gerald v. Commonwealth*, 68 Va. App. 167, 172 (2017) (alterations in original) (quoting *Baker v. Commonwealth*, 284 Va. 572, 576 (2012)). "[W]hen interpreting a statute, the Court "'presume[s] that the legislature chose, with care, the words it use[d]" when it enact[ed the] statute.'" *Green v. Commonwealth*, 72 Va. App. 193, 202 (2020) (all but first alteration in original) (quoting *Rives v. Commonwealth*, 284 Va. 1, 3 (2012)). "Consequently, if the language in a statute is 'plain and unambiguous, we are bound by [its] plain meaning.'" *Id.* (alteration in original) (quoting *Tisdale v. Commonwealth*, 65 Va. App. 478, 484 (2015)). "Ordinarily, when a

---

[5] While this Court's decision in *Diaz-Urrutia* requires circuit courts to "engage in a four-step process to classify the basis of the revocation proceeding before determining what sentence it may impose," 77 Va. App. at 193, it does not require circuit courts to actually proceed through those steps on the record. *See Fines v. Rappahannock Area Cmty. Servs. Bd.*, 301 Va. 305, 312 (2022) (noting that "[a]bsent a statutory requirement to do so, 'a trial court is not required to give findings of fact and conclusions of law'" (alteration in original) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 500 n.8 (2015))); *see also Pilati v. Pilati*, 59 Va. App. 176, 181 (2011) ("With few exceptions, when no specific explanation is given by a trial court, we presume the court followed the governing legal principles . . . .").

- 7 -

particular word in a statute is not defined therein, a court must give [the word] its ordinary meaning." *Otey v. Commonwealth*, 61 Va. App. 346, 350 (2012) (quoting *Moyer v. Commonwealth*, 33 Va. App. 8, 35 (2000) (en banc)). And "we give [an undefined] phrase 'its ordinary meaning, given the context in which it is used.'" *Jones v. Commonwealth*, 276 Va. 121, 125 (2008) (quoting *Sansom v. Bd. of Supervisors*, 257 Va. 589, 595 (1999)). "In ascertaining such meaning, dictionary definitions and pertinent analysis in prior cases may be consulted." *Green*, 72 Va. App. at 203. "[W]here possible, '[w]e ordinarily resist a construction of a statute that would render part of a statute superfluous.'" *Harris v. Washington & Lee Univ.*, 82 Va. App. 175, 192 (2024) (second alteration in original) (quoting *Loch Levan Land Ltd. P'ship v. Bd. of Supervisors of Henrico Cnty.*, 297 Va. 674, 685 (2019)).

"A statute is considered ambiguous if the text can be understood in more than one way or refers to two or more things simultaneously or when the language is difficult to comprehend, is of doubtful import, or lacks clearness or definiteness." *Morgan v. Commonwealth*, 301 Va. 476, 482 (2022) (quoting *Baker*, 284 Va. at 576). "If the relevant language of a statute in question is ambiguous, this Court 'must apply the interpretation that will carry out the legislative intent behind the statute.'" *Cox v. Commonwealth*, 73 Va. App. 339, 344 (2021) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). In doing so, it is our "duty . . . to avoid absurd results." *Jacobs v. Meade*, 227 Va. 284, 288 (1984). Probation statutes are "liberally construed . . . to allow courts to achieve probation's remedial purpose, affording courts the latitude to rehabilitate the offenders before them." *Hannah v. Commonwealth*, 303 Va. 109, 119 (2024).

Applying these principles of statutory interpretation, we begin by ascertaining the plain meaning of the language employed in Code § 19.2-306.1(A)(x), which includes in the definition of a technical violation a probationer's "failure to . . . maintain contact with the probation officer

- 8 -

whereby his whereabouts are no longer known to the probation officer." "Failure" simply means "[d]eficiency[,] lack[,] want," or "[a]n omission of an expected action, occurrence, or performance." *See Failure, Black's Law Dictionary* (12th ed. 2024). "Maintain" is defined as "[t]o continue (something)." *Maintain, Black's Law Dictionary* (12th ed. 2024); *see Nolte v. MT Tech. Enters., LLC*, 284 Va. 80, 91 (2012) ("'Maintain' is defined as '[t]o continue (something),' not to start or commence." (alteration in original) (quoting *Maintain, Black's Law Dictionary* 1039 (9th ed. 2009))). The ordinary meaning of "contact," as it is used in the context of Code § 19.2-306.1(A)(x), is "a condition or an instance of meeting, connecting, or communicating." *Contact, Webster's Third New International Dictionary* (2002). The phrase, "whereby his whereabouts are no longer known to the probation officer," requires that a probationer's whereabouts be known to his probation officer in the first place. *See* Code § 19.2-306.1(A)(x).

Nevertheless, the *phrase* "failure to . . . maintain contact" is ambiguous because it is subject to two interpretations. Under Monroe's reading of the statute, "failure to . . . maintain contact" contemplates a scenario where contact is established and thereafter discontinued. The phrase can also be understood to mean that a "failure to . . . maintain contact" may occur despite the failure to initiate contact because a failure to begin undeniably results in a failure to maintain. We conclude that the latter construction is more faithful to the General Assembly's intent in enacting Code § 19.2-306.1(A)(x) for a combination of three reasons.[6]

---

[6] The paramount goal of statutory interpretation is to ascertain the intent of the General Assembly. *See Kohl's Dep't Stores, Inc. v. Va. Dep't of Tax'n*, 295 Va. 177, 188 & n.8 (2018) (stating that "even th[e] rule [of lenity] 'is not to be applied where to do so would conflict with the implied or expressed intent of [the legislature]'" (third alteration in original) (quoting *Liparota v. United States*, 471 U.S. 419, 427 (1985))). If the language employed in a statute is unambiguous, the intent of the General Assembly is usually found in the plain meaning of the words used. *See Botkin v. Commonwealth*, 296 Va. 309, 314 (2018); *Gerald*, 68 Va. App. at 172. When confronted with ambiguity, our goal of determining the intent of the General Assembly remains the same, *see Cox*, 73 Va. App. at 344, but we may consult canons of construction, *see Mouberry v. Commonwealth*, 39 Va. App. 576, 582 n.2 (2003) ("[C]anons of construction are merely 'designed to help judges determine the Legislature's intent as embodied

First, it is logically consistent with our Supreme Court's understanding of the word "maintain." In *Nolte*, our Supreme Court distinguished the litigation phases of commencing an action and maintaining an action, holding that a foreign LLC may initiate an action without registering in the Commonwealth but must register to maintain it. *Nolte*, 284 Va. at 91-92 (interpreting the phrase "may not maintain any action . . . until it has registered in the Commonwealth" (alteration in original) (emphasis omitted) (quoting Code § 13.1-1057(A))). The Court reasoned that Code § 13.1-1057 only precludes maintenance, not commencement. *See id.* ("'Maintain' is defined as '[t]o continue (something),' not to start or commence." (alteration in original) (quoting *Maintain*, *Black's Law Dictionary* 1039 (9th ed. 2009))). However, the Court did not dispel the truism that commencement is a predicate for maintenance: if an action is never commenced, it cannot be maintained. Here, Code § 19.2-306.1(A)(x) speaks in terms of a probationer's "failure to . . . maintain contact," thereby placing an immediate obligation on a probationer to "maintain contact with the probation officer." *See Failure*, *Black's Law Dictionary* (12th ed. 2024) (defining "failure" as "[a]n omission of an expected action, occurrence, or performance"). A *failure* to commence necessarily results in a *failure* to maintain, so an obligation to maintain implicitly contains an obligation to commence.

Second, this is the more liberal construction of Code § 19.2-306.1(A)(x)—a probation statute. *See Hannah*, 303 Va. at 119. "Statutes that permit the trial court to impose alternatives to incarceration, such as probation or conditionally suspended sentences, are highly remedial and should be liberally construed to provide trial courts valuable tools for rehabilitation of criminals." *Cilwa v. Commonwealth*, 298 Va. 259, 269 (2019) (quoting *Peyton v.*

---

in particular statutory language.'" (quoting *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001)), and "look to internal and external consistency, legislative history, and . . . the overarching purposes of the statute in order to determine the statute's meaning," *Butcher v. Commonwealth*, 298 Va. 392, 401 n.2 (2020) (McCullough, J., concurring).

*Commonwealth*, 268 Va. 503, 508 (2004)). When a probationer's first technical violation is a violation of Code § 19.2-306.1(A)(x), the trial court is presented with a "valuable tool[] for rehabilitation": the ability to impose up to a 14-day sentence of active incarceration. *Id.*; *see* Code § 19.2-306.1(C). And the more restrictive interpretation that the failure to initiate contact is no violation of Code § 19.2-306.1(A)(x) would not be consistent with the remedial purpose of probation statutes. *See Commonwealth v. Canales*, 304 Va. 200, 213 (2025) ("[T]he power of the courts to revoke suspensions and probation . . . must not be restricted beyond the statutory limitations." (alterations in original) (quoting *Grant v. Commonwealth*, 223 Va. 680, 684 (1982))).

Third, Monroe's interpretation would place a probationer who contacts his probation officer before absconding in a worse position than a probationer who makes no effort at all to contact—or even respond—to his probation officer. "Rehabilitation is more readily accomplished when the probationer is under the broad control of the court and the direct supervision of the court's probation officer." *Rease v. Commonwealth*, 227 Va. 289, 294-95 (1984). It could hardly be said that the legislature intended for a probationer who *never* was under the supervision of his probation officer be insulated from a potential active sentence while a probationer who absconds after making strides toward rehabilitation be subjected to the same.

Hence, we hold that Monroe failed to maintain contact with his probation officer regardless of whether he initially communicated with his probation officer and then stopped or never communicated with him in the first place. After all, Monroe does not suggest that he *successfully* maintained contact. His lack of contact with his probation officer precluded him from maintaining contact and therefore constituted a failure under Code § 19.2-306.1(A)(x).

Code § 19.2-306.1(A)(x) also requires a probationer's "whereabouts" to be "no longer known" as a result of the probationer's "failure to . . . maintain contact." Here, the record

supports a finding that Monroe's probation officer *knew* where he was after he was released from incarceration: an apartment in Petersburg. This conclusion is supported in the record by the consistent updating of Monroe's addresses, from Prince George before his arrest on the underlying offense, to Colonial Heights at the time of his indictment, to Petersburg at the time the MVR was authored and the capias was issued. Indeed, on the MVR, the apartment in Petersburg is listed as Monroe's "*[l]ast known* [a]ddress." (Emphasis added). And, of course, Monroe's whereabouts were known during his incarceration.

After Monroe's probation officer ascertained Monroe's whereabouts, Monroe never reported to probation and shirked his duty to respond to his probation officer's several communications such that he failed to maintain contact with his probation officer, resulting in his whereabouts being "no longer known" to the probation officer. Whether a probationer's whereabouts are "no longer known" is a factual question, and the longer one fails to respond to his probation officer's communications, the more likely one's whereabouts will be considered "no longer known." On this record, given the nearly two-year period of silence on Monroe's part contrasted against his probation officer's several attempts to contact him, we have no difficulty concluding that there was evidence to support the trial court's conclusion that Monroe had violated Code § 19.2-306.1(A)(x).[7] Thus, the trial court did not err by revoking Monroe's suspended sentence and imposing 14 days of active incarceration for the violation. *See* Code § 19.2-306.1(C) (stating that a violation of subsection (A)(x) "shall be considered a second

---

[7] Of course, there is a difference between failing to report to probation within three days and failing to report to probation within nearly two years. Given the elongated period during which Monroe failed to maintain contact with his probation officer, we need not decide whether 1) a shorter lapse in the maintenance of contact with his probation officer or 2) a shorter period of time during which his whereabouts were "no longer known" would suffice to establish a violation of subsection (A)(x). *See Hannah*, 303 Va. at 121 ("Judicial restraint dictates that we decide our cases on the best and narrowest grounds available to us, favoring dispositions tailored to the facts before us over broad pronouncements of law.").

technical violation," for which "the court may impose not more than 14 days of active incarceration").[8]

Our conclusion here does not render any other provisions of the statute superfluous. *See Harris*, 82 Va. App. at 192. Code § 19.2-306.1(A)(iii) provides that a failure to "report within three days of release from incarceration" is also a technical violation.[9] In *Henthorne v. Commonwealth*, 76 Va. App. 60, 63, 68 (2022), we held that a probationer's abject failure to report to probation (outside the three-day window) constitutes a violation of Code § 19.2-306.1(A)(iii) because that subsection "does not require that a probationer must have eventually reported to probation."

But reading subsection (A)(x) to also cover the same conduct does not render subsection (A)(iii) superfluous because the probationer's "whereabouts" must be "no longer known to the probation officer" for a violation of subsection (A)(x) to occur. Additionally, because subsection (A)(iii) has an express temporal requirement, subsection (A)(x) contains an *implied* temporal requirement: a violation of subsection (A)(x) can occur only after the subsection (A)(iii) three-day period ends. *See Norton v. Bd. of Supervisors*, 299 Va. 749, 757 (2021) ("[I]t is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal." (quoting *Virginia Elec. & Power Co. v. Bd. of Cnty. Supervisors*, 226 Va. 382, 387-88 (1983))). The General Assembly has seen fit to allow probationers three days to *report* to probation. Furthermore, it is evident that a violation of subsection (A)(x) is "more serious" than a violation of subsection (A)(iii) because a probationer who violates subsection (A)(x) is subject to

_____

[8] As noted *supra*, the trial court also found Monroe in violation of Condition 6, which corresponds with Code § 19.2-306.1(A)(v) (making a probationer's failure to "follow the instructions of the probation officer, be truthful and cooperative, and report as instructed" a technical violation), and Monroe does not challenge that violation. Nevertheless, because the violations were "considered at the same revocation hearing," the two violations constitute a single technical violation. Code § 19.2-306.1(A).

[9] The Commonwealth did not pursue a subsection (A)(iii) violation in this case.

"harsher penalties," so allowing for a violation of subsection (A)(x) to occur temporally before a subsection (A)(iii) violation would disrupt the statutory "hierarchy within the categories of technical violations." *Nalls v. Commonwealth*, 79 Va. App. 712, 720 (2024) (quoting *Heart*, 75 Va. App. at 469-70). A contrary holding would render meaningless the General Assembly's policy judgment granting probationers a three-day grace period to report to probation. *Cf. Hannah*, 303 Va. at 119 ("Probation is purely a creature of statute, a policy choice shaped by the General Assembly and administered through the courts."). Thus, having returned to the question of whether a probationer's failure to *ever* report to probation under subsection (A)(iii) can also be a violation of subsection (A)(x), we now answer that question in the affirmative. *See Henthorne*, 76 Va. App. at 68 n.1.

## III. CONCLUSION

For the foregoing reasons, the trial court did not abuse its discretion in finding that Monroe violated Condition 11 of his probation by absconding from supervision. The judgment is affirmed.

*Affirmed.*